State, ex rel. Wessel, v. Weir.

STATE, EX REL. SAMUEL WESSEL, V. D. M. WEIR ET AL.

[FILED SEPTEMBER 22, 1891.]

1. **Counties**: INDEBTEDNESS: WARRANTS. A county board cannot lawfully incur an indebtedness against the county in excess of the taxes levied for the current year, nor can they issue warrants in any one year exceeding in the aggregate eighty-five per cent of the levy, unless there is money in the treasury for the payment of the same.

2. ———: TAXATION: CONSTITUTIONAL LIMIT. The constitution prohibits a county board from levying taxes which in the aggregate exceed one and a half dollars per one hundred dollars valuation, unless authorized by a vote of the people of the county.

3. ———: ———: REFUSAL OF BOARD TO INCLUDE CLAIMS IN ESTIMATE: MANDAMUS. The county board of S. county audited and allowed certain *bona fide* claims against the county, but refused to include the same in the estimate of the taxes to be levied for the ensuing year. *Held*, That *mandamus* will lie to compel the performance of the duty.

ORIGINAL application for *mandamus*.

*Pound & Burr*, for relator, cited: *Clark v. Dayton*, 6 Neb., 192; *State v. Cathers*, 22 Id., 792.

*Robert Ryan*, *L. O. Hull*, and *H. T. Conley*, contra, cited: *U. P. R. Co. v. Buffalo Co.*, 9 Neb., 452; *B. & M. R. Co. v. Clay Co.*, 13 Id., 370; *Rogers v. Walsh*, 12 Id., 30; *Blair v. Lantry*, 21 Id., 259; 15 Am. & Eng. Ency. Law, 1222.

NORVAL, J.

This is an original application for a writ of *mandamus* to compel the respondents, D. M. Weir, Chas. U. Grove, and John A. Green, the county commissioners of Sioux county, to include in the estimate of the expenses of said

county, certain audited and allowed claims owned by the relator, and to levy and collect a tax to pay the same.

On the 29th day of November, 1889, the board of county commissioners audited and allowed on the road fund, the claim of Murphy & Whiting, for grading a public road, the sum of $125, and on the same day the sum of $200 was allowed on the bridge fund to said Murphy & Whiting, in full payment for the erection of the Antelope creek bridge.

On December 26, 1889, the following claims were audited and allowed on the general fund :

No. 742, Chas. C. Jameson, for making tax list...... $216
No. 754, Murphy & Whiting, court house extras..... 251

On January 6, 1890, claim No. 765, of C. C. Jameson, for salary and expenses as county clerk, was audited and allowed on the general fund, in the sum of $120 ; and on the 16th day of the same month there was allowed on claim No. 767, to E. D. Satterlee, as salary as county attorney and expenses, the sum of $122.25. The relator is the owner of all of the above claims, the same having been duly assigned to him.

No appeal has been taken from the allowance of any of said claims, nor is the justness of the same questioned, yet the board of county commissioners refused and neglected to include these claims in their estimate of the expenses of the county.

Counsel for the respondents, in their supplemental brief, argue that Sioux county is not liable for the payment of the relator's claims for the reason that they were allowed after the tax levy for the year 1889 was exhausted, and that said indebtedness was incurred in excess of the levy of taxes for said year.

Section 34 of chapter 18, Compiled Statutes, provides that " It shall be unlawful for the county board of any county in this state to issue any warrants for any amount exceeding the aggregate of eighty-five per cent of the amount

State, ex rel. Wessel, v. Weir.

levied by tax for the current year, except there be money in the treasury to the credit of the proper fund for the payment of the same; nor shall it be lawful for the county board to issue any certificate of indebtedness in any form in payment of any account or claim, nor make any contract for, or to incur any indebtedness against the county in excess of the tax levied for county expense during the current year; nor shall any expenditure be made or indebtedness be contracted to be paid out of any of the funds of said county in excess of the amount levied for said fund."

The legislature, by the above section, has limited the power of county boards in incurring county indebtedness. They cannot lawfully incur an indebtedness against the county in excess of the tax levied for the current year, nor can they issue warrants on any fund in any one year exceeding in the aggregate eighty-five per cent of the amount levied for said fund for said year, unless there is money in the treasury to the credit of such fund for the payment of the same.

The proofs show that the total levy of taxes for the year 1889, in Sioux county, for county purposes was $8,106.78, divided into three funds, as follows: General fund, $5,135.56; bridge fund, $2,162.34, and road fund, $810.88. Warrants to the amount of $300 have been drawn against the last named fund. The proof fails to show what amounts have been audited and allowed on the general and bridge funds. There is, however, in the record "Exhibit B," being the certificate of the county clerk, which states "that the general fund was exhausted to the limit as provided by law on the 22d day of July, 1889, by warrant No. 509 issued on that date; that the bridge fund was exhausted to the limit as provided by law on the 28th day of August, 1889, by warrant No. 6 issued on that date." The certificate of the county clerk is merely the legal conclusion of the officer, without stating any fact upon which to base the same. It certainly cannot overthrow the presumption that

the county board did its duty in allowing these claims. There is an entire absence of proof to show that, when the indebtedness was contracted, the levies for 1889 were exhausted, or that the board in contracting the indebtedness exceeded the limit authorized by law. As to the claims for making the tax list and the salaries of the county clerk and county attorney, it is safe to say that the provisions of section 34, in so far as they limit the power of county boards to create county indebtedness, and bind the county for its payment, have no application. The salary of a county officer is not an indebtedness of the county which is created or incurred by the county board. The law makes it the duty of the county clerks and county attorneys to discharge the duties of their respective offices imposed by law, and they cannot refuse to perform the same on the ground that the tax levy has been exhausted, nor is the county for that reason relieved from paying the salaries of such officers, but must provide for the payment of the same by making estimates and levies the next succeeding year.

As already stated, the tax levied by the county board in the year 1889 for road fund amounted to $810.88. Under the provisions of section 76, chapter 78, Compiled Statutes, one-half of all money paid into the county treasury in discharge of road tax constitutes a road fund in counties not under township organization, which is at the disposal of the county commissioners for road purposes, the other half of the money paid into the county treasury as road tax, constitutes a distinct road fund, and is to be expended by the road overseer. The one-half of the levy in Sioux county for road purposes in 1889, or $405.44, was, therefore, at the disposal of the respondents for road purposes. There is in the record the certificate of the county clerk to the effect that warrants to the amount of $300 were drawn on the road fund. It does not, however, appear at what date they were drawn, nor that they were issued before the indebtedness of $125 to Murphy & Whiting was contracted,

or before the claim therefor was allowed. So far as the record discloses, the indebtedness, for which the $300 in warrants were issued, was contracted subsequently to the incurring of the liability to Murphy & Whiting. From the record before us we conclude that the claims herein involved are legal and binding obligations of Sioux county.

At the meeting of the county board in January, 1890, an estimate of the expenses of the county for the year 1890 was made as required by law, which included the claims of the relator. At the July, 1890, meeting of the board, by resolution, the items in the estimate of expenses, which included the claims in controversy in this case, were stricken from the estimate for the reason, as stated in the preamble to the resolution, that the actual necessary expenses of running the county for the year 1890 will equal the entire revenue of the county, and there will be nothing left to pay the indebtedness of the county incurred in previous years. The levies made by the board in 1890 amount, in the aggregate, to fifteen mills on each dollar valuation. No greater levy could have been made without a vote of the people. Section 5, article 9, of the constitution provides that "county authorities shall never assess taxes, the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of the constitution, unless authorized by a vote of the people of the county."

It is contended by the respondents that as the valuation of the county will not permit a levy and estimate large enough to pay the relator's claims and the current expenses of the county, the county commissioners were justified in refusing to provide for the payments of the claims of the relator. If it be true that the respondents may lawfully exhaust all the revenues of the county for current expenses without making any provision for the payment of the just indebtedness of the county already incurred, then the

only alternative left the relator is a vote of the people of the county authorizing the levying of a tax for the payment of his claims.    And should such a question be submitted to a vote of the people, it might fail to carry.    We do not think the relator is compelled to submit to such an alternative.    His claims are just, and the indebtedness was incurred in carrying on the county government.    If the indebtedness was so large that its payment would absorb so much of the revenues of the county, as to leave the county board practically without means to meet the current expenses of county government, we might be called upon to require only a portion of the plaintiff's claims to be paid in one year and the balance out of future tax levies. So far as is disclosed by this record the relator's claims constitute the entire indebtedness of the county, which has not been provided for.    It is not believed that the payment of these claims out of the next tax levies will seriously embarrass the county.

The county clerk and county treasurer were made defendants, but it does not appear that they have refused to perform any official duty, and as no relief is asked against them the action is dismissed as to them.    A peremptory writ of *mandamus* will issue against the board of county commissioners requiring them at their session in January, 1892, to include the amounts of the relator's claims in the estimates of taxes to be levied for said year, and at the proper time levy taxes for the payment of the same.

WRIT ALLOWED.

THE other judges concur.