STATE, EX REL. WILLIAM P. COLLINS, RELATOR, v. O. W. GARDNER, TREASURER, ET AL., RESPONDENTS.

FILED MAY 24, 1907.   No. 14,545.

1. Schools and School Districts: WARRANTS: PAYMENT. There is no restriction in the school law upon the power of school district officers to issue warrants in payment of teachers' wages and current expenses payable out of the general fund, and warrants issued for a liability of this nature incurred during previous years may be paid out of funds derived from taxes levied and collected during the current year.

2. ——: ——: ——. The general fund of a school district is a continuing fund upon which warrants may be issued, and if not paid for want of funds they may be registered under the provisions of the warrant act, sections 10850, 10851, Ann. St., and paid in the order of their registration, upon the accumulation of money in the fund upon which they are drawn.

3. ——: ——: ——: MANDAMUS. Mandamus will not compel school district officers to appropriate and set apart the entire revenue of the district for general purposes to the payment of registered warrants, if the effect will be to close the schools and deprive the children of the district of a common school education, but will require such officers to set apart so much of said fund as is necessary to maintain a common school for the shortest time provided by law and at the least possible expense, and use the remainder of the fund in payment of such warrants in the order of their registration.

ORIGINAL application for a writ of mandamus to compel respondents, as school district officers, to apply certain moneys in payment of school warrants. *Writ to issue if a showing of certain facts is made within a reasonable time, otherwise the writ to be denied.*

*A. G. Greenlee, C. H. Eubank* and *A. J. Sawyer,* for relator.

*Gardner & White, A. F. Moore* and *Hainer & Smith,* contra.

BARNES, J.

This is an original application for a writ of mandamus. The respondents are respectively the treasurer, director and moderator of school district No. 16 of Scott's Bluff county. It appears that the relator holds by purchase and assignment a large number of school district warrants of the said district, issued at intervals between December 1, 1902, and January 31, 1905. About $2,700 worth of said warrants were issued for the payment of teachers' wages, and the remainder of them, amounting to about $300, are for incidental expenses. Soon after the issuance of these warrants, the payees presented them to the treasurer for payment. They were not paid for want of funds, and the treasurer thereupon registered them, giving each a number in the order of its presentation. It is alleged in the petition that the treasurer of said school district is receiving, and is about to receive, in each of said funds, large sums of money from the levy of taxes for the year 1905 from the state apportionment fund, and from other sources; that the respondents, as officers of said school district, have directed its treasurer to apply said moneys to the payment of the current expenses of said school district during the school year, commencing the first Monday of July, 1905, to the exclusion of the payment of the relator's warrants; that the treasurer of said district refuses to apply the said moneys, or any part of them, so coming or about to come into his hands, to the payment of the relator's warrants; that said treasurer threatens to and will apply any and all moneys realized from said sources during the school year, commencing on the first Monday in July, 1905, to the payment of the

expenses incurred during said school year, and warrants drawn in payment therefor; and refuses to apply any of the moneys so realized to the payment of the warrants owned by the relator. It is further alleged that the taxes still outstanding for years previous to the school year of 1905, and the moneys accruing to said district from other sources for such years, are entirely insufficient to pay the warrants owned by this relator, and if the defendants are permitted to expend all of said fund received for the year 1905 for the current expenses incurred by them in conducting the school in said district for that year, to the exclusion of the payment of any part of the relator's warrants, he will be without remedy, will have no means of collecting the moneys due him on said warrants, and his claim against the district thereon will be defeated and wholly lost.

In response to the alternative writ, respondents have answered, admitting the issuance and registration of the warrants in question and the relator's ownership thereof. They also admit that they intend to apply the revenue collected from the levy of 1905 and the state apportionment fund to the payment of the current expenses of the school year, beginning in July, 1905, and also that the revenue available from other sources consists of small amounts derived from tuition received from nonresident pupils, which has been turned into the teachers' fund for the said school year, to be paid out on teachers' warrants drawn for that year. The answer also contains the following: "Respondents, further answering, allege that at the annual meeting of the legal voters of school district No. 16, held on the last Monday in June, 1905, the trustees of said district presented an estimate showing the amount of money required for the maintenance of schools in said district during the coming year; that the legal voters at said meeting thereupon determined the amount of money required for said school maintenance, and voted the same to the amount of $1,600, which was divided as follows: Teachers' fund, eighteen mills; incidental fund,

seven mills.  That all of the money so voted and levied, together with the state apportionment and accruing money for tuition, is necessary to pay the expenses of maintaining its school for the said school year." And the foregoing is assigned by the respondents as a justification for their refusal to pay the relator's warrants in the order of their registration.  No evidence was taken, and the case has been presented to us upon the pleadings, oral arguments and briefs.

It is the contention of the relator that he is entitled to a peremptory writ commanding the respondents to apply all of the moneys coming into the fund in question to the payment of his warrants in the order of their registration. Sections 10850-10852, Ann. St., provide, in substance, that all warrants upon the state treasury, the treasury of any county, city or school district, or other municipal corporation, shall be paid in the order of their presentation; that each treasurer shall keep a warrant register, which shall show the number, date and amount of each warrant presented and registered, the particular fund upon which the same is drawn, and the date of presentation.  And section 10853 of said statutes reads as follows: "It shall be the duty of every such treasurer to put aside in a separate and sealed package, the money for the payment of each registered warrant, in the order of its registration, as soon as money sufficient for the payment of such warrant is received to the credit of the particular fund upon which the same is drawn." The relator insists that these sections, together with section 11039 of said statutes, require us to grant him the relief for which he prays. It is provided by the last numbered section that the legal voters at any annual meeting shall determine by vote the number of mills on the dollar of the assessed valuation which shall be levied for all purposes, except for the payment of bonded indebtedness, which number shall be sufficient to maintain a school in the manner and for the time provided in section 14 of the school law (Ann. St. sec. 11042), but not exceeding 25 mills in any one year;

provided, that in districts having four children or less of
school age the levy shall not exceed the sum of $400 in
any year, and in districts having more than four and
less than sixteen children of school age the levy shall
not exceed the sum of $50 a child, in addition to the above;
that the tax so voted shall be reported by the district
board to the county clerk, and shall be levied by the county
board and collected as other taxes. The fund thus created
has been commonly known and designated as the general
school district fund. This is the fund out of which the
current expenses of the district are paid, and warrants
may be drawn against it, whether there is money in the
school district treasury to its credit or not.

Discussing the nature of this fund, in the case of *Zim-
merman v. State,* 60 Neb. 633, it was said: "But a
different purpose is disclosed with respect to ordinary
current expenses. They are to be paid out of the taxes
levied for the year in which they are incurred. The
school year commences on the second Monday of July.
* * * At the annual school meeting held on the last
Monday in June * * * the qualified voters are author-
ized to determine 'the amount necessary to be expended
the succeeding year, and to vote a tax on the property of
the district for the payment of the same.' * * * This
language admits of only one construction. It means that
the general expenses of each school year shall be paid
out of the taxes levied at the annual meeting held just
prior to the commencement of such year. The taxes so
levied constitute a fund against which warrants may be
drawn; and such warrants, when presented to the dis-
trict treasurer, are, in default of cash, required to be regis-
tered and paid in the order of their registration. * * *
They bear interest from the time they are presented to
the treasurer, * * * and, under the act of 1895, the
sinking funds of the district may be invested in them."
The nature of this fund was again under consideration in
*School District v. Fiske,* 61 Neb. 3, where it was said:
"It is contended, however, that, although it may be held

that the indebtedness incurred by the district for these services is payable out of the general fund, that at the time the contract was made and the indebtedness created there was no money in this fund with which to pay for them, and that for that reason the contract of the board was void. There is no express limitation of the kind suggested by statute placed upon school boards, and in the absence thereof this court would be very reluctant to declare such a rule. To do so would cripple many school districts, for out of this fund most of the money which goes toward maintaining public schools must come, and it is not always possible to have money in this fund at all times during the school year to maintain them and keep them open to pupils. The taxes had been levied to create the general fund and the amount of such levy had not been exhausted. This was sufficient to constitute a fund against which warrants may be drawn."

Again, this is an original action in this court, and we may take judicial notice of the fact that the last biennial report of the state superintendent of public instruction shows that at the close of the school year ending July 13, 1903, the indebtedness of the school districts in this state, not secured by bonds, amounted to $646,182.18. This fact seems to bear out the contention of the relator that the law has uniformly been construed by school district officers, since its first enactment, to mean that the fund for school maintenance is a continuing fund upon which warrants may be drawn for current expenses, without regard to the amount of taxes levied each year, and that such warrants, if not paid for want of funds, may be registered and paid in the order of their registration, as soon as the funds are available for that purpose.

It is contended by the respondents, however, that by amendment the legislature of 1905 changed the provisions of section 11039, *supra,* so as to limit the power of the board to expend the money raised for school maintenance to expenses to be incurred during the current year only; but an examination of the whole course of legislation

upon this point convinces us that this was not the purpose of the amendment. The only substantial change in the law made by the amendment was to require the school trustees to submit a statement of the necessary expenses to carry on the business of the district to the voters at their annual meeting, for the purpose of assisting them in making a final estimate of the amount of money required to properly conduct the schools for the ensuing year. The power to finally determine the requisite amount was still left with the voters, which, however, is limited to 25 mills on the dollar valuation. It seems clear that the voters still have the power to vote a tax to the full amount of such limitation; and the words "school support" or "amount necessary to be expended during the ensuing year for school purposes," or "amount required for support of schools during the fiscal year, next ensuing," are only used to designate and distinguish the fund created thereby from other funds, such as the bond or building fund, and the like.

The warrants which the relator holds evidence a proper liability of the district incurred for a lawful and proper purpose. The district officers had power to issue them as an evidence of its liability. They are payable out of the teachers' fund and incidental fund of the district, which are a part of the general fund, and this general fund is a continuing one upon which warrants may be issued, and, if not paid for want of funds, may be registered under the provisions of the registration act. It is apparent, however, that school district No. 16 has been extravagant in its expenditures, and for the present benefit has sacrificed its future good. It finds itself in an unfortunate situation, due alone, however, to its own extravagance, and it must be content to do as any honest individual does when his indebtedness exceeds his present ability to pay. It must curtail its expenditures so that its income may provide a fund with which to pay its debts. The law provides that upon a proper showing the district may still draw its proportionate share of the state school funds,

although unable to maintain a school for the whole period required by the school law; and if it were not for the fact that the children of school age residing in said district are entitled, under the constitution and laws of this state, to the benefits of a common school education, we would be disposed to grant the relator the full relief prayed for by his petition, and require the respondents to apply all of the money coming into the general fund of the district to the payment of the relator's warrants in the order of their registration. However, by section 6, art. VIII of the constitution, it is provided: "The legislature shall provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." It is further provided by section 7 of said article: "Provision shall be made by general law for an equitable distribution of the income of the fund set apart for the support of the common schools, among the several school districts of the state, and no appropriation shall be made from said fund to any district for the year in which school is not maintained at least three months." These provisions have been properly supplemented by statute, and it is the legislative policy of this state to see to it that the persons thus entitled to a common school education shall not be deprived of its benefits.

So we are constrained to hold that the respondents, in this case, should be required to make a division of the funds in question, and set apart so much thereof as may be necessary to maintain a common school for the least time which would enable the district to receive its proper share of the state apportionment fund, at the least possible expense, and apply the balance of the general fund to the payment of the relator's warrants in the order of their registration. That this is a proper solution of the question involved in this controversy seems to be settled by the opinion in *Wessel v. Weir*, 33 Neb. 35. In that case a writ of mandamus was applied for to compel the county board to include in the estimate of expenses for the current year an amount for the payment of certain

warrants held by the relator against the county. The defense there made was the same, in substance, as the one interposed in this case, to wit, that the actual necessary expenses of running the county for the current year would amount to a sum equal to the entire revenue of the county.; that there would be nothing left to pay the indebtedness of the county incurred in previous years, and therefore the county commissioners were justified in refusing to provide for the payment of the relator's claims. The court said: "If it be true that the respondents may lawfully exhaust all the revenues of the county for current expenses without making any provision for the payment of the just indebtedness of the county already incurred, then the only alternative left the relator is a vote of the people of the county authorizing the levying of a tax for the payment of his claims. And should such a question be submitted to a vote of the people, it might fail to carry. We do not think the relator is compelled to submit to such an alternative. His claims are just, and the indebtedness was incurred in carrying on the county government. If the indebtedness was so large that its payment would absorb so much of the revenues of the county as to leave the county board practically without means to meet the current expenses of the county government, we might be called upon to require only a portion of the plaintiff's claims to be paid in one year and the balance out of future tax levies. So far as is disclosed by this record the relator's claims constitute the entire indebtedness of the county which has not been provided for. It is not believed that the payment of these claims out of the next tax levies will seriously embarrass the county." The writ, therefore, was allowed.

School districts in this state are limited in the amount of taxes which they may levy and collect to 25 mills on the dollar of their assessed valuation for all purposes, except for the payment of bonds and the purchase and lease of school houses. It was held in *Dawson County v. Clark*, 58 Neb. 756.: "A tax to pay a judgment against

a school district cannot be levied and collected where the maximum amount of taxes authorized by statute for all purposes has already been levied." It appears in this case that the school district in question has, at all times, levied the full amount of taxes authorized by law. Hence, a judgment on his warrants would afford the relator no relief. So it seems clear that, unless he obtains some relief in this proceedng, he is without any remedy whatever. To deny him the writ and permit the respondents to pursue the course outlined by their defense would authorize them to repudiate the just indebtedness of the school district. Such a course should not be tolerated by the courts.

So we are of opinion that relator is entitled to substantial relief in this case, and he will be permitted to make a further showing as to the number of children of school age residing in the school district, the necessary expense required to afford them the benefits of a common school education, as hereinbefore indicated, the amount of funds which can be raised for that purpose and the payment of the warrants in question herein; and, upon the completion of such showing, the respondents will be required to set apart so much of said funds as shall be found necessary to conduct a common district school in the aforesaid manner, and directed to pay the remainder thereof on the relator's warrants in the order of their registration, and to continue to do this until said warrants are fully paid.

When this showing is made, the writ will be issued accordingly, and, unless the same is made within a reasonable time, the writ will be denied.

JUDGMENT ACCORDINGLY.