S. B. LUTTRELL & CO. *v.* KNOXVILLE, LA FOLLETTE & JEL-
LICO RAILROAD COMPANY *et al.*\*

(*Knoxville.*   September Term, 1907.)

1. **RAILROADS.** In materialman's suit to enforce lien, sub-
contractor is necessary party, when.

In a suit by a materialman to enforce a lien on the property of
a railroad company founded on an unadjudicated claim for
materials furnished to a subcontractor of the principal rail-
road contractor for the construction of a railroad tunnel, the
subcontractor is a necessary party. (*Post, pp.* 497-504.)

Acts cited and construed:   Acts 1881, ch. 67; Acts 1883, ch.
220; Acts 1889, ch. 103; and especially Acts 1891, ch. 98, secs.
1, 2, and 3.

Cases cited and approved:   Warner v. Yates, 118 Tenn., 548;
Vreeland v. Ellsworth, 71 Iowa, 347; Hardware Co. v. McCon-
nell, 102 Ala., 577; Cumming v. Wright, 72 Ga., 767; Murdock
v. Hillyer, 45 Mo. App., 287; Ashburn v. Ayers, 28 Mo., 77;
Estey v. Lumber Co., 4 Colo. App., 165; Thompson v. Gilmore,
50 Me., 435.

2. **SAME.** Same.   Failure to make subcontractor a party is
waived by answer of railroad to merits without objection.

The failure to make the subcontractor a party to the suit de-
scribed in the first headnote is waived by the defendant rail-
road's answer to the merits, without making the objection by
demurrer or otherwise in the lower court. (*Post, pp.* 501,
504.)

---

\*As to right to lien for explosives, see note to Schaghticoke
Powder Co. v. Greenwich & J. R. Co. (N. Y.), 2 L. R. A. (N. S.),
288.

Luttrell v. Railroad.

3. **SAME.** Same. Same. Answer denying the existence and fixing of the lien does not raise objection for nonadjudication against subcontractor or for his not being a party, when.

Objection for failure of complainant in the suit described in the first headnote to establish his claim by adjudication against the subcontractor, or to make the subcontractor a party to such suit, is not made or raised so as to avoid a waiver of the objection by defendant railroad's answer denying that complainant has taken the necessary steps to fix a lien in his favor upon respondent's railroad and property, and denying that complainant has acquired or is entitled to any lien on such property; a construction concurred in by defendant railroad, by permitting complainant's evidence, showing that the materials were furnished to the subcontractor and by him used in the construction of the railroad tunnel, to be admitted without objection. (*Post, pp.* 504, 505.)

4. **SAME.** Defects in notice or absence of notice of lien for materials furnished to a subcontractor may be waived.

In a materialman's suit to enforce a lien for materials furnished to a subcontractor in the construction of a railroad tunnel, defects in complainant's notice to the railroad of his lien, or the failure to give such notice, may be waived by the defendant railroad, and the same is waived by not making objection in the lower court. (*Post, p.* 505.)

Case cited and approved:    Noll v. Railroad, 112 Tenn., 140.

5. **SAME.** Materialman's lien for materials furnished to a subcontractor may be enforced without attachment.

A materialman's lien against a railroad and its property for materials furnished to a subcontractor in the construction of a railroad tunnel may be enforced in chancery, without attachment of the property sought to be subjected, by a bill framed in strict conformity with the statute creating the lien, with a description of the property whose sufficiency is not questioned in the answer, and resulting in a decree declaring the lien

upon the ·property by substantially the same description as
that given in the bill, where the statute does not require at-
tachment of the property sought to be subjected. (*Post, pp.*
505-509.)

Acts cited and construed:     Acts 1883, ch. 220; Acts 1891, ch.
98, secs. 2 and 3.

Cases cited and approved:     August v. Seeskind, 6 Cold., 173;
Bryan v. Zarecor, 112 Tenn., 511; Trust Co. v. Condon, 67 Fed.,.
106, 14 C. C. A., 314.

6. **SAME. Rule of liberal construction given to mechanic's lien.
law is applied to railroad lien law.**
The rule of liberal construction uniformly given to the mechanic's
lien law to carry out its purpose, and to secure and protect.
those entitled to the lien, and thereby to promote and encour-
age improvements, is applied to the railroad lien law. (*Post, p.*
507.)

Cases cited and approved:     Barnes v. Thompson, 2 Swan, 215;
Alley v. Lanier, 1 Cold., 541; Kay v. Smith, 10 Heisk., 42;
Steger v. Refrigerator Co., 89 Tenn., 453; Ragon v. Howard, 97
Tenn., 341.

7. **SAME. Lien for explosives furnished to a subcontractor to be
used in blasting in constructing a railroad tunnel.**
A materialman is entitled to a lien against a railroad for explo-
sives furnished to a subcontractor to be used in blasting in
the construction of. a railroad tunnel, under a statute creat-
ing a lien for work and materials furnished in the construction
and repair of railroads. (*Post, pp.* 512, 513, 515, 520.)

Acts cited and construed:     Acts 1883, ch. 220, sec. 3; Acts
1891, ch. 98, sec. 1.

Case cited and approved:     Powder Co. v. Railroad, 113 Tenn.,
392.

Luttrell v. Railroad.

**8. SAME. Materialman has lien for materials furnished to a subcontractor to be used in construction or repair of railroad, whether so used or not.**

A materialman has a lien for materials furnished in good faith to a subcontractor to be used in the construction or repair of a certain railroad, though such materials are not actually used for the purpose for which furnished. (*Post, pp.* 513, 514.)

Acts cited and construed: Acts 1883, ch. 220, sec. 3; Acts 1891, ch. 98, sec. 1.

Cases cited and approved: Powder Co. v. Railroad, 113 Tenn., 392.

**9. SAME. No lien for materials furnished to a railroad subcontractor for erection of shanties for his workmen.**

A materialman is not entitled to a lien for materials furnished to a railroad subcontractor for the erection of shanties on leased land adjacent to the railroad right of way for the shelter of his workmen. (*Post, pp.* 513, 514, 515.)

Acts cited and construed: Acts 1883, ch. 220, sec. 3; Acts 1891, ch. 98, sec. 1.

Cases cited and approved: Lumber Co. v. Railroad, 33 Neb., 39 (overruling the former opinion in 28 Neb., 39); Dudley v. Railroad, 65 Mich., 655.

**10. SAME. No lien for tools and machinery and repairs thereof, and the appliances used in operating them; articles specified.**

A materialman is not entitled to a lien against a railroad for furnishing to a railroad subcontractor gasoline, gasoline torches, and coal oil, used for lighting a railroad tunnel while in process of construction, packing, mattocks, cotton waste, electric light supplies, carts, tools, shovels, spades, blacksmith tools, wagons, scrapers, plows, machines, machinery, derricks, derrick crabs, cables, and repairs for all these, for they are not lienable articles. (*Post, pp.* 509-513, 515-519.)

Luttrell v. Railroad.

Acts cited and construed:    Acts 1883, ch. 220, sec. 3; Acts 1891, ch. 98, sec. 1.

Case cited and approved:    Powder Co. v. Railroad, 113 Tenn., 392, 396, 397; Powder Co. v. Railroad, 42 Fed., 474; Trust Co. v. Railroad, 23 Fed., 703.

11. SAME. No lien for tableware and commissary supplies, nor materials in payment for labor, when.

Under our statute creating the railroad lien, tableware and commissary supplies furnished to a subcontractor and materials furnished to the workmen in part payment for their labor are not lienable articles, for the sense in which they enter into the construction of the railroad is too remote. (Post, pp. 519, 520.)

Acts cited and construed:    Acts 1883, ch. 220, sec. 3; Acts 1891, ch. 98, sec. 1.

Case cited and approved:    Powder Co. v. Railroad, 113 Tenn., 392, 396, 397.

12. SAME. Lien for specified articles furnished to a subcontractor to be used in the construction of a railroad tunnel.

A materialman is entitled to a lien against a railroad for furnishing to a railroad subcontractor dynamite, fuse, blasting wire, wire fuse, nails, nuts, washers, bolts, soft steel and iron which went into the construction of the lining and approaches to the railroad tunnel. (Post, pp. 509, 510, 515, 520.)

Acts cited and construed:    Acts 1883, ch. 220, sec. 3; Acts 1891, ch. 98, sec. 1.

FROM ANDERSON.

Appeal from the Chancery Court of Anderson County. HUGH G. KYLE, Chancellor.

TEMPLETON & TEMPLETON, for complainants.

CORNICK, WRIGHT & FRANTZ and X. Z. HICKS, for defendant railroads.

SHIELDS, CATES & MOUNTCASTLE, for defendant Mason & Hoge Co.

MR. SPECIAL JUSTICE HENDERSON delivered the opinion of the Court.

The original bill was filed in the chancery court of Anderson county February 3, 1905, by complainants, a copartnership engaged in the hardware business at Knoxville, against the Knoxville, La Follette & Jellico Railroad Company, a Tennessee corporation, the Louisville & Nashville Railroad Company, a Kentucky corporation, and Mason & Hoge Company, a corporation or copartnership, defendants.

Complainants furnished materials and supplies, etc., to G. H. Cole & Co. to the amount of $10,506.45, which were used in the building and construction of Dossett's tunnel on the defendant's railroad, said G. H. Cole & Co., being subcontractors under Mason & Hoge Company; and the prayer of the bill is to have their account declared a lien on the property of the railroads, under chapter 98, p. 215, of the Acts of 1891.

After certain interlocutory orders and report of special master, the chancellor declared a lien for a portion of the account, and refused to do so for the balance, dismissing the bill as to Mason & Hoge Company. Complainants have appealed from the portion of the decree that disallows the lien; and the two railroad companies appeal from the portion of the decree adverse to them. Both sides have assigned errors.

119 Tenn.—32

We first consider the first assignment of error by the railroad companies, as that presents a preliminary question. This assignment is as follows:

"The chancellor erred in holding and decreeing that the complainants have acquired a lien on the property of the appellant railroad companies, under this proceeding, for any part of their alleged account against G. H. Cole & Co. There is no privity of contract between the complainants and either of the defendants, and as G. H. Cole & Co. are not sued, and the property of the defendants is not brought into the custody of the court by attachment, the chancery court did not acquire jurisdiction either of the person against whom complainants would be entitled to a judgment or of the property which they seek to have subjected to the payment of their alleged claim against G. H. Cole & Co., and the decree of the chancery court in this cause is absolutely void."

This is a suit upon an open, unliquidated account for materials, etc., furnished G. H. Cole & Co., the subcontractors, and which were used in the construction of the railroad. It is argued that it is necessarily a proceeding to recover judgment *in personam* against the subcontractors, and a proceeding *in rem* against the property in which the subcontractor has no interest, and that, to enable the court to pronounce judgment *in rem*, complainants must first obtain a personal judgment against the subcontractor and bring the property of the railroad into the custody of the court by attachment, or, at least, that the subcontractor is a necessary

party to the proceeding to enforce the lien under chapter 98, p. 215, of the Acts of 1891.

The act of 1891 amends chapter 220, p. 296, of the Acts of 1883, and the lien is given by section 1, p. 215, of the Acts of 1891, to the materialman and others on the property of the railroad "in as full and ample a manner as is now provided by law for persons contracting directly with such railroad company for any such work and labor done or for materials furnished, provided that within ninety days after . . . such materials are furnished . . . such materialman . . . shall notify in writing any such railroad company or the owner of such railroad, should it or they reside in the State, or its or their agents or attorneys, should it or they be beyond the limits of the State, that said lien is claimed, specifying in the face of said notice the character of the . . . materials furnished, and the value thereof; and said lien shall continue for the space of one year from the service of said notice, and continue until the termination of any suit commenced for the enforcement of said liens, brought within said one year; and said liens shall have priority over all other liens on such railroad, its property and franchises."

Section 2 provides "that the liens provided for in this act may be enforced by suits brought against such railroad company in the circuit or chancery court of the county or district where the work or material, or any

part thereof, was done or furnished, or any part of said services was rendered."

Section 3 provides "that the plaintiff shall set out in his declaration or bill, as the case may be, with reasonable certainty, the work done, services rendered or materials furnished, the amount claimed therefor, the nature and substance of any contract made with such railroad company, or any contractor or construction company, or subcontractor, as the case may be, accompanying such declaration or bill, with a copy of the notice executed, as required in the first section of this act. And such suit shall be docketed and conducted as other suits in said courts."

The bill in this case by its averments fully complies with above directions of the act with regard to notice. G. H. Cole & Co., the subcontractors to whom the materials were furnished, are not made parties. The bill alleges that the Mason & Hoge Company had the contract originally with the railroad company to construct the Dossett tunnel. They sublet the work of construction to G. H. Cole & Co. as subcontractors, to which the railroad company agreed.

This latter company began the work of construction September 15, 1902, but failed to comply with the terms of their contract, and certain modifications of the contract were agreed upon between them and Mason & Hoge Company. G. H. Cole & Co. finally failed to carry out their contract and became wholly insolvent, so that, under the provisions of the contract between the two,

Luttrell v. Railroad.

the Mason & Hoge Company, on November 30, 1903, took charge themselves of the work. G. H. Cole & Co., voluntarily retired from the work, and delivered to Mason & Hoge Company all the materials then on hand, which had been furnished by complainants to the former company, and the latter company prosecuted the work to completion, completing it the 1st of April, 1905.

The bill exhibits an itemized statement of the account of materials, supplies, etc., furnished by complainants to G. H. Cole & Co., showing a balance due thereon and unpaid of $10,506.45, and alleges that the whole of these were used in the construction of the tunnel, a part by G. H. Cole & Co., and the remainder by Mason & Hoge Company.

The railroad companies answer to the merits, and interpose no objection by demurrer or otherwise on account of the failure of complainants to make G. H. Cole & Co. parties. The Mason & Hoge Company, also, answer fully to the merits.

The railroad company holds a contract of indemnity from Mason & Hoge Company, and that company, in their answer, admit that certain portions of the materials furnished by complainants to G. H. Cole & Co., amounting to $467.38, are liens. They tender this amount to complainants in full settlement of their claim. It being refused, the money is paid into court; and they deny that complainants are entitled to lien for any of the other articles.

While the act does not expressly provide that the party to whom the materials are furnished, the subcontractors, G. H. Cole & Co., in this case shall be made parties, the authorities are to the effect that this is necessary. In 2 Jones on Liens, section 1303, it is said:

"A subcontractor who holds an open, unsettled, or disputed account against the principal contractor should obtain an adjudication of this before seeking to establish a lien against the owner, or at the same time that he seeks to do so. He should either obtain a judgment against the contractor before bringing an action to enforce the lien, or he should make the contractor a party to that action. The burden of ascertaining whether there is any defense to the action ought not to be put upon the owner of the property. He is not presumed to have any knowledge upon the subject. Further than this, if the contractor establishes his lien against the property, and the owner is compelled to pay it, he has recourse on the principal contractor. He ought to be furnished with an adjudicated claim, and not with a mere open account."

In *Vreeland* v. *Ellsworth,* 71 Iowa, 347, 23 N. W., 374, it is said:

"We have the question, whether a subcontractor, who holds an open, unliquidated, and unsettled account against the principal contractor, may bring his action against the owner of the building or improvement, and establish a mechanic's lien upon the property, without adjudicating the claim or attempting to adjudicate in

any way against the contractor, who is the person primarily liable upon the account.  We think this question must be answered in the negative.  If the claim were liquidated, it may be the principal contractor would not be a necessary party.  But that question we need not determine.  This is an open, unliquidated account—a mere charge against the contractor.  The burden of ascertaining whether there is any defense to the action ought not to be put upon the owner of the property.  He is not presumed to have any knowledge upon the subject.  Further than this, if the subcontractor establishes his lien against the property, and the owner is compelled to pay it, he has recourse on the principal contractor.  He ought to be furnished with an adjudicated claim, and not with a mere open account."

To the same effect are the following:  *May & Thomas Hardware Co.* v. *McConnell,* 102 Ala., 577, 14 South., 768; *Cumming* v. *Wright,* 72 Ga., 767; *Murdock* v. *Hillyer,* 45 Mo. App. 287; *Ashburn* v. *Ayers,* 28 Mo., 77; *Estey* v. *Hallack, etc., Lumber Co.,* 4 Colo. App., 165, 34 Pac., 1113; *Thompson* v. *Gilmore,* 50 Me., 435.

In *Warner* v. *Yates & Co.,* 118 Tenn., 548, 102 S. W., 92, which was under chapter 67, p. 79, of the Acts of 1881, as amended by chapter 103, p. 207, of the Acts of 1889, construing that peculiar statute, it is said: "The principal contractor is a necessary party, because he is the debtor sued, and the owner of the property, because it is sought to reach his or her property.  They are both interested, and must have their day in court; otherwise,

there would be a failure of due process of law. The principal contractor has the right to controvert the indebtedness claimed, and the owner of the property the existence of the lien sought to be enforced, and the action cannot be maintained without establishing both the debt and the lien."

While it is true that G. H. Cole & Co. are proper parties, we think that the railroad companies have waived their right to make the question by answering to the merits, without making the objection by demurrer or otherwise.

It is insisted that the amendment to the answer makes the question, where it is denied "that the complainants have taken the necessary steps in this case to fix a lien in their favor upon respondents' railroad and property, and they deny that complainants have acquired or are entitled to any lien upon respondents' property for the payment of their alleged claim."

This is no more than a repetition of the denials of the answer as originally filed, which simply make an issue upon the allegations of the bill as to whether the materials claimed were furnished to G. H. Cole & Co., for the construction of the tunnel, and were used for that purpose, whether the notice has been given as prescribed by the statute, whether the bill has been filed in time thereafter—in short, whether complainants had taken the proper preliminary steps prescribed in the act, so as to enable them to maintain a suit to enforce the lien.

Looking to these pleadings, and the decree of the

chancellor, it does not appear that the question of the failure of complainants to first establish their claim against G. H. Cole & Co. by suit and judgment, or to make them defendants in this case, was made in the lower court, or directly raised or determined there; and it cannot be made in this court.

In addition to this, the evidence by complainants to show that the materials claimed were furnished G. H. Cole & Co. and by them used in the construction of the tunnel, was admitted without objection on the part of defendants.

In the case of *Noll & Thompson* v. *Railroad,* 112 Tenn., 140, 79 S. W., 380, it is held that the defects in a subcontractor's notice to, a railroad of his lien, or the failure to give such notice, may be waived by defendant, and same is waived by not making the objection in the court below. It is said in that case:

"The object of the notice required by the statute is to apprise the railroad company of the amount claimed, and thus put it in a position where it can protect itself against overpayments to the original contractor. While it performs this important function, yet, like any other benefit, it may be waived by the party in whose interest it is created. And a waiver can very well be assumed unless a timely objection is made to the notice. Such objection, we think, comes too late when made for the first time on appeal."

It is next insisted that the decree of the chancellor is erroneous, because the chancery court has not ac-

quired jurisdiction over the property of the railroad companies, and no authority to enforce any lien thereon, because complainants did not bring the property into the custody of the court by attachment or other appropriate process.

There is no provision in the act of 1891, and none in the act of 1883, requiring the issuance and levy of attachment on the property sought to be subjected.

The bill is framed in strict conformity with the provisions of sections 2 and 3 of the act. It describes the lines of railroad upon which the lien is sought as leading from Jellico, through the counties of Campbell, Anderson, and Knox, to Knoxville. The contract for the construction of a large part of this line was awarded to Mason & Hoge Company, who sublet a part of the construction to G. H. Cole & Co., including that portion of the road comprising Dossett's tunnel and its approaches thereto; the portion thus sublet lying in Anderson county.

The bill is sworn to, but no attachment is issued. No question is made in the answer with regard to the description of the property; and by the decree of the chancellor the lien is declared upon the property by substantially the description given in the bill.

Referring to creditors' bill to set aside fraudulent conveyances, where the court has proper service on defendant, it is said, in the case of *August & Bing* v. *Seeskind et al.,* 6 Cold., 173:

"Having thus obtained jurisdiction, the court may

Luttrell v. Railroad.

rightfully proceed to decree upon the equity of the cause, and give such relief to the complainant as may be suitable to the equity alleged and established. If the subject-matter of the controversy be property of any kind, the court may decree such relief as may be proper to the equities of the parties, and execute such relief by process suitable to the purpose. Seizure of the property, pending the litigation, or at the beginning, is not generally essential to give the court jurisdiction over it and to enforce the proper relief in respect of it."

It is further said that if, during the progress of the suit, fear arises that the property may be wasted, upon proper showing the chancellor will issue process to seize and impound it. This is only auxiliary to the jurisdiction of the court. "But," as said, "it is not essential to the jurisdiction of the court, to enable it to proceed to decree upon the matter in controversy, that the property be seized or impounded."

The right of the court of equity to enforce a lien upon property without seizure by attachment is enforced in *Bryan* v. *Zarecor,* 112 Tenn., 511, 81 S. W., 1252, when the property is specifically described in the bill.

In *Central Trust Co.* v. *Condon,* 67 Fed., 106, 14 C. C. A., 314, the case was a bill to enforce a lien of subcontractors and materialmen under the act of 1883. The facts arose before the passage of the amendatory act of 1891. The bill set out the facts constituting the lien, and described the property, and prayed for a sale of the property. There was no attachment prayed for or is-

sued.   Judge Taft, speaking for the court of appeals
of the sixth circuit of the United States, said: "It is:
clearly a suit to enforce a subcontractors' lien, for other-
wise the court could not enforce it."

He further says: "The statute does not provide that
an attachment should issue in suits to enforce railroad
liens.   It is true that under the mechanic's lien law of
Tennessee the lien must be enforced by attachment, but
this is because the section expressly requires it.   There
is no such provision in the railroad lien law.   The lien
of the principal contractor is to be enforced merely by
suit, and the form of the declaration is prescribed in the
statute.   The lien of the subcontractor may be enforced
by suit against the principal contractor as principal deb-
tor and against the company as garnishee, but there is.
not a suggestion in the statute that attachments are nec-
essary to the perfecting of a lien."

The uniform policy has been to give to the mechanic's.
lien law a liberal construction to carry out its purpose,.
and to secure and protect those entitled to the lien, and
thereby to promote and encourge improvements. *Barnes*
v. *Thompson,* 2 Swan, 215; *Alley & Burk* v. *Lanier,* 1
Cold., 541; *Kay* v. *Smith,* 10 Heisk., 42; *Steger* v. *Arctic
Refrigerator Co.,* 89 Tenn., 453, 14 S. W., 1087, 11 L. R.
A., 580; *Ragon* v. *Howard,* 97 Tenn., 341, 37 S. W., 236.
In the last-named case it is said: "It is, and has been,
the policy of our law to protect and enforce this lien of
mechanics and furnishers and not allow them to be de-
feated by any technical niceties of construction."

Luttrell v. Railroad.

Without further discussion of the authorities, we think this first assignment of error by the railroad companies is not well taken, and the same is overruled.

Upon final hearing the chancellor decrees that complainants are entitled to lien upon the property of the railroad for any dynamite, fuse, blasting powder, blasting wire, wire fuses, gasoline and gasoline torches, coal oil, nails, nuts and bolts, soft steel and iron, and building material for shanties for the men, shown on the account, but that complainants are not entitled to lien for any of the other articles set out in the account. As the parties cannot agree upon the value of the articles so declared liens, the cause is referred to R. H. Sansom, Esq., who is appointed special commissioner, or master, to report thereon.

It is further adjudged that complainants have a lien on the property of the railroad for the payment of what may appear to have been declared a lien upon the coming in of the report of the special master, notwithstanding the fact that they caused no injunction to be issued, and no attachment to be issued and levied on the property of the railroad.

The special master makes his report in accordance with this reference, which is confirmed, without exception by either side, by final decree in the cause; and it is decreed that complainant have a lien for the following:
Dynamite, fuse, blasting wire, and wire fuse. $ 267.84
Gasoline ........ ................. ....... 224.95
Gasoline torches ................. ...... 49.50

| | |
|---|---:|
| Coal oil ................................. | 53.78 |
| Nails, nuts, washers, bolts, soft steel, and iron | 803.72 |
| Building material for shanties ............. | 855.43 |

Making total ........................ $2,255.22

The railroad companies are allowed 30 days in which to pay said amount into court, and upon default their property is decreed to be sold.

The second assignment of error by the railroad companies is with regard to the allowance of lien for the articles above referred to, aggregating $2,255.22. While defendants contest lien for any amount upon their property, Mason & Hoge Company paid into court an amount to cover the first item above of $267.84, and also $201.72; the latter sum being that part of the item for nails, nuts, etc., of $803.72, which they admitted are lienable. This thus leaves the remainder of that allowed by the chancellor to which defendants' assignment of error applies.

The assignments of error by complainants are with reference to the balance of their account, less the sum of $1,848.07, which was for steel rails used in the construction of a tramway, but were not consumed in use; the claim being for all materials and supplies furnished G. H. Cole & Co. that were consumed in their use for the construction of the tunnel which consist of all the other articles in their account, the subcontractor's plant and outfit, machinery, tools, etc., and repairs of same, and supplies for same.

It may be said that the assignments of error of both

complainants and defendants relate to materials furnished for all these purposes, for some of which the chancellor allowed lien, and for some he did not.

The title to chapter 220, p. 296, of the Acts of 1883, is "An act to protect contractors, subcontractors, mechanics, laborers, and engineers who perform work or furnish materials for the construction or repair of railroads."

Chapter 98, p. 215, of the Acts of 1891, was to amend that act, as stated in its title, "providing a prior lien for and giving greater security" to the parties named therein. The portion of section 1 of this act necessary to be referred to in this connection is as follows:

"That section 3 of an act passed March 29, 1883, as referred to in the caption of this bill, the same being section 2778 of Milliken & Vertrees' Compilation of the Laws of Tennessee, be and the same is hereby amended so as to provide that hereafter every subcontractor, laborer, materialman or other person who performs any part of the work in grading any railroad company's roadway, or who constructs or aids in the construction or repairs of its culverts and bridges, or furnishes cross ties or masonry or bridge timbers for the same, which is used in the building and construction of such railroad, its bridges and culverts, or who lays or aids in the laying of its track, building of its bridges, the erection of its depots, platforms, wood or water stations, section houses, machine shops or other buildings, or for the delivery of material for any of these purposes, or for any

engineering or superintendence, or who performs any valuable service, manual or professional, by which any such railroad company receives a benefit, all and every such person or persons shall have a lien on such railroad, its franchises and property, for the value of such work and labor done, or material furnished, or services rendered, as hereinbefore set out and specified, in as full and ample a manner as is now provided by law for persons contracting directly with such railroad company for any such work and labor done, or for material furnished. . . ."

As already stated, the material, supplies, etc., were furnished by complainants to G. H. Cole & Co., subcontractors under Mason & Hoge Company, and they were used and consumed in the construction, for the Knoxville, La Follette & Jellico Railroad Co., of the Dossett tunnel, a tunnel about one thousand two hundred yards long, which required about three years for completion.

The lien is conferred alone by the act, and its language must, of course, control. The lien is given in favor of the materialman "for the delivery of material" to the subcontractor "who performs any part of the work in grading any railroad company's roadway, or who constructs or aids in the construction or repairs of its culverts and bridges, . . . or who lays or aids in the laying of its track."

In *Powder Co.* v. *Railroad,* 113 Tenn., 392, 83 S. W., 354, 67 L. R. A., 487, 106 Am. St. Rep., 836, it is held

Luttrell v. Railroad.

that explosives, furnished to G. H. Cole & Co., used in blasting in this Dossett's tunnel, are materials for which the furnisher is entitled to lien. It is said: "The consumption of explosives is the only use that can be made of them, and their consumption is absolutely necessary to the excavation of tunnels through rock. In other words, they are material which enter into the building and grading of the road, as much so as trestles, bridges, and culverts contain materials which are necessary to the grading of the road at such places as require trestles and bridges and culverts."

We refer first to the building materials furnished for the erection of shanties. These shanties were erected on lands adjacent to the right of way for the railroad, and upon lands leased for that purpose, and they were used for shelter for the workmen.

Upon the question as to whether the materialman has a lien for materials furnished in good faith to be used in the construction, but which in fact were not used, the court, in *Powder Co.* v. *Railroad,* 113 Tenn., 404, 83 S. W., 354, 67 L. R. A., 487, 106 Am. St. Rep., 836, cites the case of *Stewart Chute Lumber Co.* v. *Missouri Pacific Railway Co.,* 28 Neb., 39, 44 N. W., 48, decided by the supreme court of Nebraska, under the statute of that State somewhat similar to ours. The holding of that case is approved to the effect that the lien of the materialman attaches upon the delivery in good faith of the material to the subcontract-

or, and it is not necessary that the material furnished should have been actually used in the improvement.

This Nebraska case further held that lumber and other material furnished to the subcontractor for the erection of shanty boarding houses for the workmen and stables for the horses, erected adjacent to the right of way of the railroad, were liens under that statute. The decision in that case on this subject was by a divided court, and upon rehearing it was overruled by the opin-ion reported in 33 Neb., 39, 49 N. W., 769. This decision is based upon the particular language of the Nebraska statute. There the lien is given for material which "shall have been furnished or labor performed in the construction, repair and equipment of any railroad." The court says:

"These words do not include lumber, material, or labor which was not performed or furnished in the construction, repair, or equipment of the road. If this were not so, there would be no limit to the liability of a railway company. If, by a strained construction of the statute, the company is held liable for material used for shanties, it would by the same rule be liable also for food and clothing for the employees and feed for the teams; and it would be difficult to tell where its liability would cease. The lien is created by statute, and independently of that no cause of action exists against the company."

The court cites as in accord the case of *Dudley* v. *Railway Co.*, decided by the supreme court of Michigan, and reported in 65 Mich., 655, 32 N. W., 885.

Luttrell v. Railroad.

The first decision in the Nebraska case is referred to in *Powder Co.* v. *Railroad,* as authority that the materialman is entitled to a lien for materials furnished in good faith to the subcontractor, whether they were actually used in the construction or not. The holding of the Nebraska case that there was a lien for the lumber furnished for the shanties and stables is referred to only incidentally.

The materials furnished for these shanties were not put upon the right of way of the railroad, and did not go into the construction thereof, and are not lienable material under the act.

The other articles for which the chancellor allowed lien are gasoline, gasoline torches, and coal oil. They were used for lighting the tunnel. The gasoline torches were used as small vessels to contain and utilize the gasoline; the work in the tunnel having been prosecuted day and night. The other articles, for which lien was denied, consist of packing, mattocks, cotton waste, electric light supplies, carts, tools, shovels, spades blacksmith tools, wagons, scrapers, plows, machines, machinery, derricks, derrick crabs, cables and repairs for all these.

Counsel for complainant in their brief say: "Confessedly the dynamite and the powder are liens; but the dynamite and powder could not be used without the drill to bore the hole in the rocks, and the drill could not be used without the engine and boiler, and the engine and boiler could not be used without the cotton

waste and the lubricating oil. The cotton waste and the oil and the steel drills were all alike completely consumed in the use."

The contention is that complainants are entitled to lien for the articles referred to, because, from the character of the work of construction and the length of time required, they were necessarily consumed or destroyed in the use, some within a few hours or days, while some would last for months, and all were indispensable to the work.

The same principle can be as properly applied with regard to horses and mules that may be employed in hauling, which, on account of the hard and heavy draughts and long-continued work, are broken down and rendered worthless and useless. And thus the furnisher would have a lien on the railroad property for the whole outfit of the subcontractor, in addition to all the materials which were furnished for, or went into, the construction.

This would be a construction of the act which extends far beyond the intention of the legislature. The test is not whether the article furnished was consumed in its use, either instantly, as in case of explosives, or by degrees from long and hard use. If lien is allowed for tools and machinery, and horses and mules, for complete destruction, on the same principle it should be allowed for deterioration in value *pro tanto*, when not completely destroyed.

In *Powder Co.* v. *Railroad*, supra, the following is

quoted from Elliott ön Railroads: "But a lien cannot be obtained for machinery furnished to a contractor to be used in doing the work upon a bridge, under a statute authorizing a lien for all materials 'used in and about' the construction of a bridge."

In this connection it is said (pages 396, 397) :

"All of the decisions upon this subject draw a clear distinction between the explosives and explosive supplies used in the construction of a railroad company's roadway, and which are necessarily consumed in the use thereof, and machinery and tools furnished for that purpose, which are held to be a part of the contractor's plant, and which do not go into the building of the roadway, but retain their identity and fitness for future use, saving the limited and gradual wear and tear incident to such use. The explosives which are necessarily consumed in the use are held to be liens, while the tools and equipment which constitute the contractor's plant do not constitute liens under the several lien statutes."

There is cited in support of this the case of *Giant Powder Co.* v. *Oregon Pacific Railway Co.* (C. C), 42 Fed., 474, 8 L. R. A., 700, distinguishing the case of *Basshor* v. *Railroad Co.,* 65 Md., 99, 3 Atl., 285.

Rapalje & Mack's Digest of Railway Law, vol. 6, p. 284, digests many cases upon this question, and lays down the rule as adjudged therein in the following language:

"In providing that a materialman shall have a lien for all materials furnished for, or used in and about, the

construction of bridges, the law means such material as ordinarily enter into or are used in the construction of bridges, and are fairly within the express or implied terms of the contract between the owner and the contractor. It does not mean the machinery that may be used for the manufacture of the materials themselves.

"Where a contractor for building a bridge buys machinery for crushing stone to be used in the manufacture of artificial stone for the masonry work, and also appliances to carry the manufactured stone to the place where it is to be used, the seller of such machinery and appliances has no lien therefor under the provision of Maryland mechanic's lien law, which gives a materialman a lien for all materials furnished for, or used in and about, the construction of bridges."

Section 3200, Rev. St. Mo. 1879 [Ann. St. 1906, section 4239], provides "that all persons who shall do any work or labor in constructing or improving the roadbed, rolling stock, station houses, depots, bridges or culverts of any railroad company, . . . and all persons who shall furnish ties, fuel, bridges or material to such railroad company, shall have . . . a lien," etc. In the case of *Central Trust Co.* v. *Texas & St. L. Ry. Co.*, (C. C.), 23 Fed., 703, the United States circuit court held that "lubricating and illuminating oils are not 'materials,' within the meaning of section 3200 of the Missouri Revised Statutes, and parties furnishing them are not entitled to any statutory lien."

If the tools, carts, and machinery furnished as a part

Luttrell v. Railroad.

of the subcontractor's outfit are not lienable articles under the act, it follows that the repairs and appliances used or needed in operating same would stand on the same ground.

Lastly, lien is claimed for the table ware and commissary supplies.

It is claimed that these articles were necessary to afford to the workmen cooking stoves, table furnishings, and supplies in a commissary which was kept by the subcontractor, and the material furnished to the workmen in part payment for their labor.

Again, in *Powder Co.* v. *Railroad,* supra, the court adopts the language of the authority there cited, that "the food furnished a contractor for his workmen may be said to be 'used' and 'consumed' in the construction of the road on which they work, but this is only so in a remote and consequential way or sense. The food does not enter directly into the structure, and is not so used."

In Elliott on Railroads, section 1068, it is said: "So of course, groceries and food furnished for the workmen, while in a sense used in the construction of the road, are not materials which so enter into its construction that a lien can be based upon them."

The stove upon which to cook the food, and the tableware out of which to eat it, are too remote; and the legislature did not intend to give lien for such. The same principle would apply to clothing furnished the workmen, bedclothing upon which to sleep, coal and wood for

fires by which to warm, and it might be extended indefinitely to any number of luxuries.

The result of the above holding is that none of the materials included in the account of complainants, made exhibit to the bill, are lienable materials, excepting the items for dynamite, fuse, blasting wire, and wire fuse, and the items for nails, nuts, washers, bolts, soft steel and iron, which went into the construction of the lining and approaches to the tunnel.

The cause is remanded to the chancery court, to be further proceeded with in accordance with this opinion. The costs of the appeal will be paid by complaintants. The costs of the chancery court will be paid as adjudged by the chancellor.