CASE 43—PETITION EQUITY—OCTOBER 15.

# Bainbridge v. City of Louisville.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. NEGOTIABLE INSTRUMENTS — LOST BONDS. — Where the maker of negotiable paper pays it after notice of its loss by the owner, he is liable to the owner unless he can show that he paid to a pur-

chaser for value who purchased in good faith before maturity; and' he is liable even though the payment was made to a *bona fide* holder and without notice of the loss, if it was made after maturity, as the paper had then lost its negotiable character.

These rules applied in an action to recover of the maker the interest on municipal bonds which had been stolen from the plaintiff, the original owner, some of the coupons having been paid by the defendant when they were overdue, after notice of the loss of the bonds.

2. REMEDY TO PREVENT PAYMENT OF LOST BONDS. — Ordinarily, where negotiable paper has been lost by the real owner, he may tender a bond of indemnity, which, when approved by the court, will authorize payment to him by the maker; but in this case, the bonds in controversy being thirty-four in number and not maturing for many years, and the interest coupons falling due semi-annually, to apply this rule would multiply litigation between the maker and the holders, so resort must be had to some other remedy. The parties being already in a court of equity, an amendment to the petition asking for an injunction restraining the maker from paying the bonds or coupons to any claimant until his right as against the plaintiff, the real owner, is determined, with an order requiring the maker to make each claimant a party as the bond or coupon is presented so that he may litigate with the plaintiff, would be a more effectual mode of securing the rights of all; but the litigation to determine the rights of future claimants should not be at the cost of the maker.

WM. LOW, TEMPLE BODLEY, A. M. RUTLEGE FOR APPELLANT. Brief not in record.

T. L. BURNETT FOR APPELLEE.

Where the maker of negotiable paper which has been lost or stolen pays it to an innocent purchaser for value, who took it before maturity, he is not liable to the original owner. In this respect, municipal bonds are upon the same footing as other negotiable instruments. (Caruth v. Thompson, 16 B. M., 575; Story on Promissory Notes, 148; Chitty on Bills, 277; Story on Bills, 207 Burroughs on Public Securities, page 359; Battle & Webster v. Landenslager, 84 Pa. St., 446; City of Elizabeth v. Foree, 29 N. J. L., 587; Birdsall v. Russell, 29 N. Y., 220; Commonwealth v. Emigrants' Industrial Savings Bank, 98 Mass., 12.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The city of Louisville, under legislative authority, issued five hundred of its bonds, payable to bearer,

for one thousand dollars each, bearing six per cent. interest, with coupons attached, for semi-annual installments of the interest. There were sixty coupons annexed to each bond, the principal sum not falling due for many years. The bonds were placed upon the market, and Bainbridge, the father of the appellant, to whom forty-one of the bonds were sold, instituted the present action, in his life-time, to recover the interest coupons that had matured and were unpaid. The appellee refused to pay the interest due, on the following state of fact: Bainbridge had deposited the bonds for safe-keeping in the vaults of the First National Bank of Baltimore, and on the night of the 19th of August, 1872, the bank was entered by burglars and all the bonds of the appellant, together with many other securities, stolen. The loss of the bonds, with a full description of their character, in the form of a circular, was sent to all the principal cities in this country, as well as the leading banking institutions, and every step taken by those sustaining the loss that was necessary, or could well be done, to prevent the purchase of the bonds from the thieves.

Notice was also given to the appellee (the city of Louisville) and to the Bank of America, its fiscal agent, in New York. They were notified not to pay the bonds or coupons to any one but the appellant. The city, as the record shows, proceeded to pay off these coupons, or some of them, to the parties presenting them; some before they were due and others after maturity.

The appellant, Bainbridge, when he instituted this

.action to recover the interest on the bonds, tendered to the city a bond of indemnity securing it against loss, by reason of any payment the city might make to him. The bond was, in fact, tendered before the suit was filed. The bond was refused, and hence this action.

It is contended by the appellant that the appellee having had notice of the theft of these bonds, and that he was the owner, before the city could pay any of the coupons or bonds, the party presenting them for payment should have been required to show that he was a *bona fide* holder; that he had received it in the usual course of trade, before maturity, and for a valuable consideration. This is the principal question raised by the pleadings. Seven of the forty-one bonds purchased by the appellant from the city have been recovered, and are not involved in this litigation. During the progress of the action the original plaintiff died, and his daughter, Eliza Bainbridge, is now the sole beneficiary, and prosecutes this appeal.

The bonds and coupons having all been made payable to bearer when the holder demanded payment of the bank, the presumption is that he acquired the paper in good faith, in the usual course of business, and upon a valuable consideration; and unless the notice to the city that appellant was the real owner, and the bonds had been stolen from him rebuts this presumption, and places the city on inquiry, the judgment below in favor of the city was proper.

There should be some remedy afforded the *bona*

*fide* owner of such paper, who loses it from his possession by theft or otherwise, for its recovery, or such relief as will prevent the maker of the paper from paying it to the holder when he presents it, until he shows that he is an innocent holder, and this being done, the original owner is without remedy.

It is a reasonable rule we think, and one that may be regarded as settled, that when the theft has been shown, the presumption is that the paper is still in the possession of the thief, and a subsequent holder, other than the original owner, when he demands payment, should be required by the maker, before payment, to show that he is in good faith entitled to the money. This rule, of course, applies where the maker of the paper has actual notice of the loss.

The universal doctrine of the text-books on the subject is, that the maker is liable to the owner of the paper after notice of the loss, if he pays the money on the paper to another without requiring the latter to establish a clear title in the event it subsequently appears that he was without title. (2 Parsons on Notes and Bills, page 256; 2 Daniel on Negotiable Instruments, section 1461; Byles on Bills, page 298; Edwards on Bills, section 434.)

While the rule requiring such inquiry may work some inconvenience to the maker of the paper, still it is better that he should suffer this temporary annoyance than to deny the real owner all remedy when he has lost the evidence of the indebtedness, and for no other reason than that the paper lost is a negotiable instrument.

Daniel on Negotiable Instruments says:

"When, however, the loss by the original owner or the theft from him is·proved, the burden of proof shifts, and the holder must show that he acquired it *bona fide* for value and before maturity, or from some one who had a perfect title." (Volume 2, section 1470, 3d ed.)

In the case of Hinckley v. The Union Pacific Railroad Company, 129 Mass., 52, involving a similar question, this doctrine of the text-books was fully recognized, and there has been no authority adduced by the appellees sustaining or even intimating a contrary rule.

It was incumbent on the city of Louisville in this case, having had undoubted evidence or notice of the loss of this paper, to show, when payment had been made after the loss and notice thereof, that the holders were purchasers in good faith before maturity and for value.

The mere belief that the party presenting the paper was an innocent holder is not sufficient. The notice of the loss placed the city upon inquiry, and as to those coupons paid, a perfect title in the holder must be shown. The fact that the law may presume the holder of such paper to be a transferee for value, affords the maker no protection when the paper has been lost by the original owner, and notice brought home to the maker before payment. "The onus of proof to show that he came honestly by the bill or note lies on the plaintiff; it is cast upon him by proof of the instrument's having been lost by accident or theft." (Edwards on. Bills, section 438.)

"But when the defendant in such suit has proved that the instrument was obtained by illegal means or by fraud, felony or loss, or has since been the subject of fraud, felony or loss, then the holder must take up the burden of showing that he gave value for the instrument." (Parsons on Notes & Bills, 2d ed., 280.) In this case the evidence of payment by the bank to those holding the paper is not satisfactory on the subject of title, and therefore the Chancellor should have entertained the petition in order to grant the relief. Some suggestion has been made by a witness for the appellee to the effect that he was secretary of the sinking fund, and had to pay, by the direction of the presiding officer, these coupons, or that they were paid by order of the sinking fund commissioners; further, that suits were instituted and a recovery had on some of the coupons against the city. It does not appear what defense was made by the city to the recovery, or that the appellant or those representing him were notified of the pendency of those suits, or that they were his coupons. Payment to a party *who claimed* to be a *bona fide* holder, after notice of loss to the maker, is not sufficient to protect him against the claim of the real owner. He must not only assert his claim, but establish his title, such as would satisfy an ordinarily prudent business man that he was the holder in good faith for value.

The appellee is attempted to be made liable for the payment of coupons that were overdue when presented. To what extent coupons were paid, after maturity, by the appellee, on bonds owned by the

appellant, does not fully appear, but it is certain that if payment was made of an overdue coupon, it had then lost all its virtue as negotiable paper, and should be regarded like any other chose in action. It can not be presumed in such a case that the holder is in good faith, and entitled to the money. The maker pays it at his peril, and particularly in a case where he has notice of the loss by the real owner; but even without notice of the loss, the fact that the paper is overdue is such a notice of the want of title as will place the party who is about to purchase it, or the maker of the paper, on inquiry.

This case must go back for further proceedings, and the difficulty arises on the return of the case as to the mode of procedure, so as to give relief to the real owner without injury to the maker or the innocent holder. We think it is well settled that ordinarily a bond of indemnity may be tendered, and when approved by the court will authorize the payment of the bonds or the coupons, by the maker, as they mature, to the real owner.

Here, however, is a case where the bonds do not mature for many years, and the interest coupons falling due semi-annually. The bonds in controversy being thirty-four in number, with over two thousand coupons attached, may to-day be in the hands of as many different holders, and to require the payment of each coupon as it falls due by the city to the appellant upon a bond of indemnity, would subject the city to a litigation with each holder when the coupon was presented.

Daniel on Negotiable Instruments says:

"The parties liable upon a bill or note are entitled to its production and surrender before payment; but as this is physically impossible when it has been lost, the owner should, and must, tender a sufficient indemnity in some form against any future claim by a finder or holder upon the lost instrument. This indemnity is not, in the nature of things, as adequate a protection as the delivery of the instrument to the payer, but it approximates it as nearly as practicable." (Volume 2, section 1480.)

The application of this rule would multiply litigation to such an extent in the present case with the city, who is the mere stakeholder between the original owner and the claimant, as must suggest to the mind of the Chancellor some other remedy less burdensome to the maker of the paper, and at the same time affording greater protection to all the parties.

The parties are now in a court of equity, and the bond of indemnity is in effect a bond to protect the city and the innocent holder from loss. An amendment to this petition, asking for an injunction against the city to prevent it from paying these bonds to any claimant until his right as against the original owner is determined, with an order requiring the city to make each claimant a party as the bond or coupon is presented, so that he may litigate with the real owner, would, it seems to us, be a more effectual mode of securing the rights of all. If the appellant can give a bond of indemnity, he can give an injunction bond, conditioned so as to fully indem-

nify the city. With the case kept on the docket, each claimant, having one or more bonds or coupons, may litigate to the extent of his interest without delay, and the case as to the other bonds or coupons not presented, or about which no litigation is had, continued, that future claimants may be heard. The money due can be loaned by the Chancellor, in his discretion, giving the preference to the original owner. A re-issue of the bonds and coupons should not be required, conceding that the Chancellor could exercise such a power. Such a step would not only increase the danger to the city resulting from the loss of these bonds, for which it is in no manner responsible, but would greatly add to the litigation that must necessarily exist, as the case is now presented, for the protection of the rights of these parties. The Chancellor would not permit the appellant, if the bonds and coupons were re-issued, to place them on the market.

This case is in no preparation for a judgment for or against the city in regard to the coupons already paid. So far as the record shows, the appellant or his assignee has never been divested of his right or title. The evidence being insufficient of payment to an innocent holder, before maturity, for value, the burden, after notice, is on the city of showing that the coupons were paid to a *bona fide* holder. As to the coupons paid after maturity, such a payment does not relieve the city from liability to the original owner; but the difficulty in this case arises from the want of testimony establishing the payment of the coupons that belonged to the appellant after they

Bainbridge v. City of Louisville.

had matured. This court cannot determine that question in the light of the record before us.

It is maintained by counsel for the appellant that payment before maturity, although to a *bona fide* holder, and particularly after notice of the loss, creates a liability on the part of the city to the extent of the coupons paid before maturity.

Parsons on Notes and Bills says that a payment before maturity, although without notice and to a *bona fide* holder, leaves the maker still liable to the loser because the payment is out of the ordinary course of business. (Volume 2, page 255.)

We are not disposed to follow this rule, or to apply it in a case like this: There can be no doubt but that a payment may be made before maturity, by the consent of both the creditor and debtor, and if so, the payments, before maturity, of these coupons to a *bona fide* holder releases the city from any obligation to pay the same coupons to the appellant. The holder of negotiable paper stands as the creditor, and the maker as the debtor. If acquired before maturity for value in the ordinary course of trade, the holder becomes invested with a perfect title, although the original owner or holder may have lost it, and if a *bona fide* holder, with the title perfect as against the original owner, presents the paper for payment, we see no reason why a payment to such a holder by the maker should not relieve the latter from all liability.

Daniel on Negotiable Instruments says:

"The debtor may of course pay the bill or note to any one who is the holder under an indorsement

to himself personally, or an indorsement in blank at any time before maturity, provided the holder consents to receive payment." (Volume 2, section 1234.)

It at last depends upon the question as to whether the holder as against the maker is entitled to recover when the payment is made before maturity, and the burden is on the city to establish that fact as against the claim of the appellant.

The case will be remanded for additional proof, if any, offered on the merits by either side, and to allow appellant to amend her petition if desired, that complete protection may be had to all the parties in interest. If no further proof is taken, the appellant is entitled to a judgment for the coupons paid by the city, as there is a want of testimony showing that they were paid to a *bona fide* holder.

In this view of the case, the appellee city should not be required to pay to the appellant the interest coupons upon a mere bond of indemnity. The remedy suggested is ample for all the parties, and besides, the litigation to determine the rights of the future claimants, as between them and the appellant, should not be at the cost of the city.

The judgment below is reversed, and cause remanded for further proceedings consistent with this opinion.