C. J. PHELPS, *Administrator*, v. HENRY LODGE, *Mayor, et al.*

No. 10948.

1. TAXATION—*Judgment against City—Mandamus.* The mayor and council of a city of the third class may be compelled by mandamus to levy taxes to pay a judgment rendered against the city, but the total levy of all city taxes cannot exceed four per cent.

2. ———— *Funding Bonds—Mandamus.* While the statute permits a city to fund its indebtedness, if it refuse to exercise its option to do so, it then becomes the duty of the mayor and council to levy taxes for the payment of a judgment duly rendered against the city, and the performance of this duty may be compelled by mandamus.

3. ———— *Discretion in Awarding Writ of Mandamus.* The court has some measure of discretion in awarding writs of mandamus, and in requiring levies of taxes they will not be so employed as to impose an unnecessarily oppressive burden at one time. In providing for the payment of a large judgment the whole amount may be apportioned and collected part at a time by successive levies.

Original proceedings in mandamus. Opinion filed January 7, 1899. Judgment for plaintiff.

*Arthur Fuller*, and *C. A. Cox*, for plaintiff.

*J. L. Denison*, for defendants.

The opinion of the court was delivered by

ALLEN, J. : This is a proceeding against the mayor and councilmen of the city of Erie to compel them to levy taxes to pay a judgment rendered by the district court of Crawford county in favor of David Wilson, the plaintiff's intestate, against the city of Erie, which was affirmed by this court. (*City of Erie v. Phelps*, 56 Kan. 135, 42 Pac. 336.) It appears from the agreed statement of facts that an execution on the judgment has been issued and returned wholly unsatisfied ; that

a demand has been made on the city officers to levy a
tax for the payment of the judgment; that the total
taxes levied on the property in the city of Erie for
the year 1898 amounted to $6\frac{3}{10}$ per cent., of which
one per cent. was city tax for general revenue. This
is the only city tax. The total assessed valuation of
the property of the city for the year 1898 is $89,340.
It appears that all of the one per cent. levy for city
purposes is required to meet the current expenses of
the city, and that no part of it can be applied to the
payment of plaintiff's judgment. The question to be
determined is whether it is the duty of the city officers
to make an additional levy for the purpose of paying
this judgment. The contention on the part of the
city is that there is no statute making it the duty of
the mayor and councilmen to make the levy, and that
they can only be compelled by mandamus to perform
a clear and legal duty. Erie is a city of the third
class. The following are the statutory provisions re-
lating to the power and duty of city officers in levying
taxes so far as they affect this case. By section 53,
chapter 38, General Statutes of 1897, the mayor and
council are authorized :

"1st. To levy and collect taxes for general-revenue
purposes, not to exceed ten mills on the dollar in any
one year, on all the real, mixed and personal property
within the limits of said cities taxable according to the
laws of this state."

"§ 75. At no time shall the levy of all the city taxes
of the current year exceed four per cent. of the taxable
property of the city as shown by the assessment books
of the preceding year."

"§ 78. The council may appropriate money and pro-
vide for the payment of the debts and expenses of the
city, and when necessary may provide for issuing bonds
for the purpose of funding any and all indebtedness now

existing or hereafter created of the city, now due or to become due. . . ." (Gen. Stat. 1889, ¶ ¶ 959, 965, 960.)

The power to issue bonds is restricted, however, by the succeeding provisions of the last section, and requires instruction by vote of the electors of the city as a condition precedent to their issuance. By other statutory provisions it is made the duty of the city officers to levy taxes annually to pay interest and principal on all bonds of the city.

Construing all these provisions together they amout to this, that for general-revenue purposes the tax levy is limited to one per cent. For all city purposes it is limited to four per cent. The four-per-cent. limitation has no reference to state, county or any other than city taxes. The council is authorized by section 78 to provide for the payment of the debts of the city. A judgment is of course a debt. Can it be said that it is optional with the council to provide for its payment or not, as it may elect? There would seem to be very little advantage in going to the trouble and expense of obtaining a judgment against the city if no provision for its payment can be compelled. Of course there must be legislative authority before a tax can be levied. While the language of section 78 is in form permissive, it is a rule of very general application that where public authorities are authorized to perform an act for the benefit of the public, or for an individual who has a right to its performance, the word " may " is interpreted as meaning " must." The language of the statute is that the council "may" provide for the payment of the debts of the city. The creditors are lawfully entitled to payment. It is, therefore, not optional with the city officials whether they will or will not provide for their payment, and

the word "may," though merely permissive in its ordinary signification, is mandatory as to the payment of judgments against the city. This was the conclusion reached by the court of appeals in the case of *Stevens v. Miller*, 3 Kan. App. 192, 43 Pac. 439, construing the law relating to cities of the second class, which is precisely the same as that under consideration, and accords with what was said in the opinion in the case of *Stewart v. Town Co.*, 50 Kan. 553, 32 Pac. 121.

The statute allows the city the option of issuing bonds and funding the debt. This option cannot be exercised by the council without the authority of a vote of the people; but the existence of the option does not destroy the plaintiff's rights. The city must pay. It may fund by issuing bonds, but, if it do so, taxes must ultimately be levied to pay the bonds. It merely amounts to a postponement of the time of payment. The assessed valuation of the city is not sufficient to admit of the payment of the judgment by one levy within the limits allowed by law. Three per cent. in addition to the levy for general-revenue purposes might be made; this, however, would make the rate of taxation very high. There is some measure of discretion in awarding writs of mandamus, and they ought not to be allowed to operate oppressively. We think that a levy of two per cent. per annum for the purpose of paying this judgment, in addition to the levy for general-revenue purposes, is as much as ought to be required, but this must be continued each year until a sufficient amount has been raised to discharge the judgment. As it is now too late to levy taxes for the year 1898 and too early to levy them for the year 1899, the city will be granted until the 1st of June, 1899, to exercise its option of paying the judg-

ment by issuing refunding bonds; but if it fail to do. so, then a peremptory writ will issue directing the, mayor and councilmen, and their successors in office, to levy annually a tax of two per cent. on all the taxable property in the city for the purpose of paying the plaintiff's judgment.