No. 18,910.

THERON K. GLEASON, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, *Defendant.*

SYLLABUS BY THE COURT.

PENSIONS—*To Certain Disabled Residents—Granting of, Discretionary.* The granting of pensions by the board of county commissioners to persons described in chapter 146 of the Laws of 1911 and chapter 149 of the Laws of 1913 is not mandatory, but discretionary.

Original proceeding in mandamus. Opinion filed June 6, 1914. Writ denied.

*W. P. Campbell,* of Wichita, for the plaintiff.

*John S. Dawson,* attorney-general, and *George McGill,* county attorney, for the defendant.

The opinion of the court was delivered by

WEST, J.: The plaintiff, alleging that he has resided in the state more than fifteen years and in the county more than ten years and is destitute of means of support and has no near relatives who are financially able to support him, and that he has lost the sight of both eyes and is otherwise by reason of disease and infirmities and his great age unable to perform any labor, has demanded of the county board that he be granted a pension sufficient for his maintenance, compliance with which request being refused he prays may be compelled by mandamus. The board answers that in its opinion it would be unwise to grant the pension, but that the county is and has been paying the plaintiff $10 per month for his support; that the granting of such pension is discretionary with the board. The plaintiff contends that the duty of the board is mandatory.

The constitution requires that the respective counties of the state shall provide as may be prescribed by law for those inhabitants who by reason of age, infirmity, or other misfortune may have a claim upon the aid of society. (Const., art. 7, § 4.) Chapter 146 of the Laws of 1911, "An act authorizing the board of county commissioners of any county in Kansas to pay a monthly pension to certain disabled residents thereof," provides that any county is authorized and empowered to pay such pension, not exceeding $50 a month, to persons afflicted like the plaintiff, whose parents and near relatives are not financially able to care for them, provided such persons have been residents of the state fifteen years and of the county ten years previous to the taking effect of the act. By chapter 149 of the Laws of 1913 this provision was amended so that the board is authorized and empowered to pay a monthly pension to a person thus afflicted who is wholly disabled from performing any manual labor, provided he has been a resident of the state for fifteen years and

of the county for ten years previous to the date of application. In all other respects the act remains the same. It is quite apparent that the language of this legislation purports to grant authority, but not to prescribe a mandatory duty. By section 2 of the original act the board can not grant a pension in excess of $25 a month without submitting the matter to popular vote. It is suggested that unless the later act is mandatory there was no reason for the amendment, but the change added the provision that the applicant must be unable to perform any manual labor and could date the period of residence from the time of the application and not from the taking effect of the act. *Phelps v. Lodge*, 60 Kan. 122, 55 Pac. 840, and *Inhabitants of Veazie v. Inhabitants of China*, 50 Maine, 518, are cited. It was held in the former that the municipality in question being clothed with statutory power to appropriate money and provide for the payment of its debts was in duty bound to do so, and that a creditor could compel the performance of such duty by mandamus. In the latter case it appeared that Maine had a general statute making it the duty of the overseers of the poor to relieve destitute persons found in their towns, but a later act was passed authorizing and empowering cities and towns to make proper provisions for the support of the families of volunteer soldiers enlisting in the civil war under an act authorizing the raising of ten regiments, and providing that the relief furnished under this act should not work any disabilities. The preamble recited that it was not only the duty but the pleasure of the citizens at home to provide for the support of such families as a suitable compensation for such patriotic services. The town where the soldier resided extended aid to his family and sought to hold liable the town where he had his settlement. It was held that such was not the intention of the act, but that it was to extend such aid without working any such disability as would justify such recovery from the town of the soldier's settlement, and the act was held to be

mandatory. An examination of the opinion shows that the court regarded the aid as a compensation owed by the town. The rule frequently stated is the one laid down by Chancellor Kent that "may" means "must" only in cases where public interests and rights are concerned, and where the public or third persons have a claim *de jure* that the power should be exercised. (*Newburgh Turnpike Co. v. Miller,* 5 Johnson's, Ch. 101, 9 Am. Dec. 274; see, also, *In re McCort, Petitioner,* 52 Kan. 18, 21, 34 Pac. 456; *Phelps v. Lodge,* 60 Kan. 122, 124, 55 Pac. 840; Note, 10 L. R. A. 499.) In *State v. Henry,* 87 Miss. 125, 40 South. 152, 5 L. R. A., n. s., 340, a somewhat similar question arose. The constitution provided that "The legislature may place the convicts on a state farm or farms, and have them worked thereon, under state supervision exclusively, in tilling the soil or manufacturing, or both, and may buy farms for that purpose." (p. 145.) It was held that the purchase of farms was not required. The opinion and note furnish an exhaustive review of decisions upon permissive and mandatory statutes.

It is always the rule that the meaning of a statute is to be derived from its general terms and manifest purpose, and the most cursory or the most thorough examination of the legislation in question leads alike to the conclusion that there was no thought in the legislative mind of compelling each county board to grant a pension to every applicant coming within the terms prescribed. Aside from the fact that a pension is usually regarded as a matter of grace and not of right (6 Words & Phrases, p. 5280), the language of the original act in the title and in both sections is clearly permissive and bears no indication of a mandatory purpose. While there is an express prohibition upon granting any pension in excess of $25 a month without submitting the same to a vote of the electors, even such vote is not made binding upon the board to grant the pension, but simply "sufficient to authorize the granting of the

same." Neither before nor after the enactment of this legislation did the persons therein described have a right *de jure* to such a pension, and had the legislature deemed it a matter of public obligation so to provide for citizens thus afflicted, no reason can be suggested why apt language was not used to express such intention.

Following the statutory requirement. (Gen. Stat. 1909, § 9037, subdiv. 2) to construe words and phrases according to the approved usage of the language, we must hold that the granting of the pension demanded is discretionary and not mandatory.

The writ is therefore denied.