No. 26,013.

THE FIRST NATIONAL BANK OF OTTAWA, *Plaintiff*, v. C. A. BROWN, as Mayor of the City of St. John, et al., *Defendants*.

### SYLLABUS BY THE COURT.

1. CITY BONDS—*Lost or Destroyed—Application for Issue of Duplicate Bonds —Construction of Statute.* The word "may" in a statute relating to issuing municipal bonds, while ordinarily denoting a legislative grant of authority for the issue, and indicating a discretion on the part of issuing officers at the preliminary or some intermediate stage of the proceedings, yet when a situation arises in which a party is entitled to have them issued the word should be construed as mandatory.

2. SAME—*Bonds Stolen—Application of Statute.* Bonds which have been stolen from their rightful owner, and which cannot be located after diligent and exhaustive search, are lost within the meaning of R. S. 10-701.

3. SAME—*Issuing Duplicate Bonds Would Not Increase Indebtedness of City— City Indemnified—City's Credit Not Impaired.* When bonds, legally issued by a city, have become so far mutilated as to be unfit for circulation or shall be lost or destroyed, and the city issues duplicates therefor, upon

the showing and being indemnified as provided by the statute, such duplicate bonds do not increase the indebtedness of the city, nor tend to impair its credit.

Original proceeding in mandamus. Opinion filed December 6, 1924. Judgment for plaintiff.

*C. A. Smart* of Lawrence, for the plaintiff.

*Robert Garvin,* and *Evart Garvin,* both of St. John, *C. B. Griffith,* attorney-general, *W. C. Ralston,* assistant attorney-general, for the defendants.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to compel the officials of the city of St. John to issue duplicate bonds to take the place of bonds formerly issued by the city and which were lost while owned by plaintiff. The application for the writ avers that in 1920 the city of St. John, through its proper officers, duly and legally issued certain bonds, which are described, both principal and interest payable to bearer at the office of the state treasurer; that on November 2, 1923, plaintiff was the owner of the bonds described and had them in its vault, when four bandits entered and robbed the bank of a large amount of cash and bonds, among them the bonds previously described; that plaintiff at great expense has endeavored without success to apprehend the bandits and recover the bonds, and that the same are lost; that thereafter plaintiff presented to the city an affidavit of its ownership of the bonds and their loss and requested the city to issue duplicate bonds in lieu thereof; that it had offered to indemnify the city by a good and sufficient bond from loss which might accrue by reason of the issuance of such duplicates and to pay the expense of such issue, but the city has refused to issue such duplicates. The state treasuruer is made a defendant, and as to him it is averred the bonds and coupons are made payable at his office and some accrued interest is now in his hands.

The return of the city admits that it issued the bonds described in the application; that they were payable to bearer at the office of the state treasurer; that they were stolen from plaintiff as it averred; that plaintiff had requested the city to issue duplicate bonds, had offered to furnish a proper indemnity bond to the city and to pay the expense of such issue, which request the city had refused; and admits it has paid to the state treasurer interest on the bonds as the same matured. It further alleges that defendant intends to pay

National Bank v. City of St. John.

to the state fiscal agency the interest and principal of the bonds as the same come due; that the bonds are payable to bearer, negotiable without indorsement, and are likely to pass into the hands of holders in due course who will be entitled to receive payment thereon; that the statute authorizing the city to issue duplicate bonds when originals have been lost, mutilated or destroyed is not mandatory, but leaves it to the discretion of the city officials, and that in refusing to issue such duplicates the city officials are exercising such discretion in fairness and good faith, believing such action to be for the best interest of the city and with no desire to injure plaintiff; that the statute does not provide for the issuance of duplicate for original bonds which have been stolen, but only for original bonds which have been lost, mutilated or destroyed; that the issuance of such duplicate bonds would affect the credit of the city, tend to render its bonds unmarketable, and to increase the liability of the city beyond the legal limits of bonded indebtedness; and that the application for the writ does not state facts sufficient to justify the issuance of the writ or to state a cause of action. The plaintiff has moved for judgment notwithstanding the answer. The state treasurer moved to dismiss because the application prays for no specific relief as to him.

We take it that what the parties really want is an adjudication of their respective rights and duties. When state or city officials have a clear understanding of their rights and duties it is seldom necessary to issue a writ of mandamus to compel them to perform their duty. These questions require an interpretation of our statute, which reads:

"That whenever any bond or warrant of the state or territory of Kansas, or any county, city, township, or school district, shall become so far mutilated as to become unfit for circulation, or shall be lost or destroyed, a duplicate thereof may be issued by the officer authorized by law to issue such bonds or warrants, under the regulations and restrictions hereinafter prescribed." (R. S. 10-701.)

"Such duplicate shall correspond, in number, date, amount and coupons, with the original bond or warrant, and shall have indorsed on its face, and on the face of each coupon, by the officer issuing the same, the word 'duplicate,' together with the date of its issuance." (R. S. 10-702.)

"A duplicate for a lost or destroyed bond or warrant shall not issue until there shall have been filed with the proper officer an affidavit of some person knowing the facts, setting forth the ownership of such bond, the description thereof, the number of coupons thereto attached, and the manner of its loss or destruction, and until there shall have been executed and filed with the

same officer an indemnifying bond, with securities to be approved by such officer, in a sum equal to double the amount of such warrant or bond and the coupons attached, conditioned that the parties thereto shall pay all damages which the state, county, city,-township or school district, as the case may be, may sustain if compelled to pay such lost or destroyed bonds or coupons." (R. S. 10-704.)

The defendant city calls attention to the wording of the statute, that the permissive word "may" is used instead of the imperative word "must" or "shall," and argues with much force that the statute vests a reasonable discretion in the officers, and does not compel the issuing of duplicates when the officials acting fairly in the matter do not deem it to the best interest of the city to do so. As we view the matter, the statute is, *first*, an enabling or authorizing statute, for, generally speaking, no municipality has authority to issue bonds for any purpose unless the power to do so is specifically granted, or necessarily implied, by legislative enactment; *second*, in harmony with most statutes authorizing bond issues, there are certain matters to be passed upon by the officials in which they should in fairness use a reasonable discretion; here the sufficiency of the affidavit of the loss of the bonds, the form of the indemnifying bond to be given and the sufficiency of the sureties thereon, and perhaps the expense of issuing the duplicate bonds, but, *third,* when the matter has reached the stage that one *de jure* entitled to the bonds has made a proper showing of their loss, furnished an indemnity bond in the amount required by the statute, in proper form and with adequate sureties, and is willing to pay the actual expense of the reissue, he is entitled to have the duplicates issued to him, and the statute should be construed as mandatory. (*Kansas Pacific Railway Co. v. Reynolds,* 8 Kan. 623, 628; *In re McCort,* 52 Kan. 18, 20, 34 Pac. 456; *Phelps v. Lodge,* 60 Kan. 122, 124, 55 Pac. 840; *The State v. School District,* 80 Kan. 667, 103 Pac. 136; *Johnson v. Connelly,* 88 Kan. 861, 129 Pac. 1192; *Gleason v. Sedgwick County,* 92 Kan. 632, 141 Pac. 584; and see generally cases cited in Words and Phrases, first and second series.)

By the pleadings in this case it is averred and admitted that plaintiff was the owner of the bonds in question at the time they were stolen. It did not lose title to the bonds by their theft from it, hence it is still the rightful owner of the bonds and is entitled, primarily to receive payment of the interest and principal thereon. Anyone else presenting the bonds or coupons for payment and claim-

ing to be a holder in due course of them would have the burden of proving that fact. And the defendant city, with knowledge of plaintiff's ownership and the theft, could not safely pay either the interest or the principal of these bonds to any other holder of them without first requiring such holder to assume the burden and establish the fact that he is a holder in due course.

In 2 Daniels on Negotiable Instruments, 6th ed., § 1470, it is said:

"When, however, the loss by the original owner, or the theft from him, is proved, the burden of proof shifts, and the holder must show that he acquired it *bona fide* for value, and before maturity, or from some one who had a perfect title."

This is in accord with the provisions of our negotiable-instruments law. (R. S. 52-505; R. S. 52-509.) See, also, 2 Parsons on Notes and Bills, pp. 256-260; Edwards' Bills, Notes and Negotiable Instruments, § 434; Byles on Bills, 7th ed., 378, *et seq.*

Such being true, a field is open for many suits. There are several of these bonds, each having semiannual interest coupons attached. It is possible for each bond and each coupon to be the basis of a separate action by the holder against the city, and each bond and coupon might form the basis of an action by plaintiff against the city. This situation arises without any fault on the part of the city—its bonds were issued for a lawful purpose, in legal manner and in legal form, and in this case without fault on the part of the plaintiff; yet it is a situation which is hazardous both to plaintiff and defendant. Without a statute specifically pertaining to the matter courts of equity were sometimes called upon and undertook to handle the situation, having due regard for the rights of all parties. In some of the cases a chancellor was appointed with authority to issue duplicate bonds on indemnity being given or such other terms as would secure the rights of the issuing body. In some cases the court required the suit to take the form of an injunction by the rightful owner of the bonds against the issuing body, enjoining it from paying either interest or principal to anyone else claiming to be a holder of the coupons or bonds, and providing that such holder could interplead in such suit and required him to establish the fact that he was a holder in due course. (See 25 Cyc. 1608, 1614, 1615; 28 Cyc. 1645; 13 Enc. Pl. & Pr. 357, and cases cited; *Bainbridge v. City of Louisville,* 83 Ky. 285; *Hinckley v. Union Pacific Railroad,* 129 Mass. 52; *Munroe v. Weir,* 177 Mass. 301.)

Our legislature as early as 1868, in an effort to avoid the confusion

of rights and the possible litigation growing out of such a situation, passed the statute above mentioned. By this statute the issuing body, the city in this case, is relieved in the first instance, at least, of litigation with the lawful owner, the plaintiff in this case, by issuing to it duplicate bonds, and it is protected against any claim for payment that it may rightfully make to a holder of any of the coupons or bonds by the indemnity bond given by the lawful owner. This is at least a partial, and may be a complete, solution of the difficulty in which both the issuing body and the lawful owner find themselves. And, to the extent that it is a solution of the difficulty, it is beneficial both to the lawful owner and to the issuing body. There is no reason why a compliance with it on the part of the issuing body should not be enforced by mandamus, if necessary.

The defendant city argues that the statute does not apply to *stolen* bonds, but only to those which have been mutilated, *lost* or destroyed. There is no merit in this; a bond stolen from the lawful owner, and for which he has made diligent and exhaustive search, is lost to him. The authorities discussing the rights of the parties treat loss and theft from the rightful owner as the same. (8 C. J. 796; 19 A. & E. Enc. of L., 2d ed., 569.)

In *Force v. City of Elizabeth*, 27 N. J. Eq. 408, it was held:

"Equity, in relieving against the loss of a bond payable to bearer, makes no discrimination against loss by theft."

Lastly it is argued that the issuing of duplicate bonds might be construed as increasing the bonded indebtedness of the city and would tend to impair the city's credit. Such issue, being duplicates, would not increase the bonded debt of the city; there is no reason why it should impair its credit.

Because the bonds are payable at the office of the state treasurer, which is by statute (R. S. 10-501) the state fiscal agency of the state, and some payments of interest, which plaintiff is entitled to receive, have been paid to the state treasurer, the indemnity bond in this case should run to the state of Kansas, for the benefit of the city of St. John and the state treasurer.

Judgment will be rendered for plaintiff. The writ of mandamus will not be issued at this time, but the case will be held open for the purpose of making such further orders as may be necessary.