THE STATE OF FLORIDA ex rel. J. W. GILLESPIE, L. F. RODGERS and JAMES G. MARTIN, *Relators*, v. W. C. VICKERS, Chairman, J. S. GOFF, et al., as and constituting the Board of County Commissioners of Charlotte County, Florida; JOHN HAGAN, SR., as Tax Assessor of Charlotte County, Florida; A. D. DEWEY, as Tax Collector of Charlotte County, Florida; W. T. OLIVER, as Clerk of the Board of County Commissioners of Charlotte County, Florida, *Respondents*.

158

148 So. 526.
Opinion filed May 10, 1933.

*Vocelle & Mitchell* and *H. A. Lassiter,* for Relators;
*Earl D. Farr,* for Respondents.

PER CURIAM.—Alternative writ of mandamus was issued by this Court directed to the Board of County Commissioners, the Tax Assessor, the Tax Collector and the Clerk of the Board of County Commissioners of Charlotte County, to respectively levy, assess and collect certain taxes with which to pay certain bonds issued under authority of law by the proper officials of Charlotte County, together with certain interest coupons.

The matter is now before us on motion to quash the alternative writ and also on motion of the Relators to issue peremptory writ, both of which will now be considered.

The bonds were issued under the provisions of Chapter 10409, Acts of 1925. Section 3 of that Act provides:

"The Board of County Commissioners shall levy annually all such special taxes on the taxable property within the limits of said County as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof, and such sinking fund shall be promptly invested in bonds hereby authorized to be issued or other County or Municipal bonds; but the Board of County Commissioners may, if they shall deem it advisable, post-

pone the levy of taxes for the creation of a sinking fund until the year 1926."

The authority of the Board of County Commissioners to levy a tax to provide for the payment of the bonds and interest is contained in this Section of the Act and there is no provision therein which will authorize the courts to command the County Commissioners to levy a tax except such as may be required to pay interest and an annual tax to create a sinking fund. This does not mean that when the County authorities have failed in past years to levy and collect a sufficient tax to create a sinking fund for the payment on principal of the bonds that the court may by mandamus require the authorities to levy and collect a tax in *one year* to *pay* the principal of bonds which have become in default by reason of the non-performance of the duty devolved upon such county authorities. Under this Act the County authorities may be required to annually levy and assess, if possible, collect, a tax which, if collected, would be sufficient to create a sinking fund which would be ample to retire the bonds when they become due.

This does not mean that the bondholder has no recourse. He has his recourse in a suit at law to reduce his bonds to judgment.

In State ex rel. Dos Amigos, Inc. v. Lehman, et al., 100 Fla. 1313, 131 Sou. 533, this Court said:

"The authorities generally hold that a court may, by virtue of its broad equity powers, spread a tax levy over a period of years when levied to satisfy a *judgment* obtained against a governmental entity or when levied under an Act allowing some range of discretion in the taxing power. City of Cleveland, Tennessee, v. U. S., 166 Fed. R. 677; Deere v. Board of County Commissioners of Rio Grande Co., 33 Fed. R. 823; Deuel County, Nebraska v.

First National Bank, 86 Fed. R. 264; Phelps v. Lodge, 60 Kan. 122, 55 Pac. R. 840; State v. School Dist. No. 7, 22 Neb. 700, 36 N. W. R. 278; City of Little Rock v. United States, 103 Fed. R. 418; Graham v. Quinlan, 207 Fed. R. 268; State v. Wier, 33 Neb. 35, 49 N. W. R. 785; Village of Oshkosh v. Nebraska, 20 Fed. R. (2nd Ed.) 621; People ex rel. Akin v. Board of Supervisors of Adams Co., 185 Ill. 288, 56 N. E. R. 1044."

The alternative writ commands the Tax Collector to proceed to collect the tax contemplated in the writ. · There is no allegation or showing that the Tax Collector has refused to collect the tax or that any duty rests upon him at this time to collect such tax. Therefore, this command in the alternative writ is prematurely made.

In consideration of the foregoing matters, it is ordered that unless the Relator shall within ten days move to amend his alternative writ so· as to eliminate the requiring of the levy of the tax to pay the matured and unpaid bonds and so as to eliminate the command to the Tax Collector to proceed to collect the tax and so amend as to eliminate the Tax Collector as a party to this suit, the alternative writ will be quashed. If the alternative writ be so amended the Respondents shall have five days thereafter to plead further as they shall be advised. It is so ordered.

WHITFIELD, TERRELL and BUFORD, J. J., concur.

DAVIS, C. J., concurs specially.

ELLIS and BROWN, J. J., dissent.

DAVIS, C. J. (Concurring).—I concur in the conclusion reached but for slightly different reasons from those stated in the Per Curiam opinion.

The bonds involved in this case were court-house and road bonds issued under Chapter 10409, Special Acts of

1925, Laws of Florida. Section 3 of that Act reads as follows:

"The Board of County Commissioners shall levy annually all such special taxes on the taxable property within the limits of said County, as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof, and such sinking fund shall be promptly invested in bonds hereby authorized to be issued or other County or Municipal Bonds; but the Board of County Commissioners may, if they shall deem it advisable, postpone the levy of taxes, for the creation of a sinking fund until the year 1926."

The budget system of taxation prevails with respect to counties in the State of Florida, and the counties themselves are by the constitution made political sub-divisions of the State through which important and indispensable functions of government are carried out. See Section 1, Article VIII, State Constitution. In the case at bar the resort is to an enforced amendment of a county budget in order to provide therein for the payment during the current budget year of all the matured bonds and interest coupons held by relator.

In such a situation as is here presented, where the object of the proceeding in mandamus is to enforce *in one year* the inclusion in the county budget of appropriations sufficient to meet not only current interest and sinking fund requirements for that year, but also an additional appropriation sufficient to pay the accumulations of the past, the practical result of the mandamus demand may be that, as to the accumulations of the past, the writ of mandamus must be regarded as partaking of the nature of a judgment and execution at law, thereby rendering the mandamus proceeding subject to those equitable principles that may, as a

matter of discretion in appropriate cases, be invoked to cause the Court to suspend the issuance of a peremptory writ for an oppressive levy of taxes for one and the same year, by spreading the past accumulations over several years. See Deuel County v. First Nat. Bank, 86 Fed. 264; City of Little Rock v. United States, 103 Fed. 418; City of Cleveland (Tenn.) v. United States, 166 Fed. 677; State v. School Dist. No. 7, 22 Neb. 700, 36 N. W. Rep. 278; State v. Weir, 33 Neb. 35, 49 N. W. Rep. 785; Phelps v. Lodge, 60 Kan. 122, 55 Pac. Rep. 840, for such rules.

. I have no doubt that when taxes are required to be levied under an Act allowing some range of discretion in the taxing power, that the principles stated in the cases just cited may be applied when by appropriate defenses the Court is called on to make such application in a particular case. But any such defense would have to be specially pleaded by a respondent under such a showing as would make it appear that what is proposed in the way of a spread of taxation is interposed in good faith and is justified *ex necessitate rei*. Such legal principle was recognized in the opinion in State ex rel. Dos Amigos v. Lehman, 100 Fla. 1313, 131 Sou. Rep. 533; where the Court in the 7th head-note said:

"A Court may, by virtue of its broad equity powers spread a tax over a period of years when levied to satisfy a judgment obtained against a governmental entity *or when levied under an Act allowing some range of discretion in the taxing power.*"

But as to a pledged statutory duty to make an annual statutory levy of taxes to provide a current sum sufficient to pay current interest and provide a portion of a promised sinking fund to avoid default in payment at the times agreed in the contract, there can be no more discretion

resting in the Court to refuse to order such levy when it is not made according to law, than there was in the public officials who did not comply with the law after having entered into a solemn and binding, irrevocable contract so to do.

For the enforcement of past accumulations of bonded debts and coupons, the writ of mandamus without a judgment is unquestionably available, else the case of Columbia County v. King, 13 Fla. 451, must be overruled. But such writ of mandamus, when employed to collect past accumulations of debt through the imposition of a current tax in connection with other current taxes required to be levied to meet the expenses of the current year, may so partake of the nature of a judgment and execution at law for the money due and sought to be collected by such writ, as to subject the mandamus proceeding to the same rules that would apply to a mandamus applied to enforce a judgment for the amounts involved. In such cases a judgment at law would amount to a futile and useless act, entailing more expense to the tax payers, since after a judgment is recovered, a mandamus would still have to issue to enforce its collection. See Huie v. Barkman, 179 Ark. 772, 18 S. W. Rep. (2nd) 334.

Where the effect of a mandamus for past accumulations of unpaid installments of principal and interest is so great as to result in the imposition of a special and additional amount of taxation that, *in its essential relation to other revenue requirements that must be cared for out of the same general simultaneous budget levy,* is so oppressive as would call for the exercise by the Court of its equitable power to spread a tax levy to pay a judgment for such past accumulations, if one were recovered, I think the equitable principle may be invoked without judgment and

that to require a judgment as a condition precedent to invoking it, would be the requirement of a futile and useless act wholly unnecessary under the circumstances.

The alternative writ held bad in the present case should, in my judgment, be amended in such manner as to provide separately for the current and past revenue requirements, so that this Court may, in ordering a peremptory writ, if. one is ordered, apply the equitable principle above referred to, as to that portion of the command to which it may lawfully be applied, if good and sufficient cause for doing so is made to appear.

TERRELL, J., concurs.

ELLIS, J. (Concurring in the order to quash the alternative writ but dissenting to the order allowing an amendment).—Much has been written by jurists and publicists relating to the bonded indebtedness of counties, taxing districts and municipalities in this State, and many schemes have been and will probably be proposed in the future for the payment of the indebtedness through the exercise by the State of its taxing power.

Legislation having this one purpose in view was enacted in 1929 and 1931. In an opinion by Mr. Justice STRUM, now of the Federal Court, one of the Acts, Chapter 14575, Laws of 1929, was held invalid in part. Amos v. Matthews, 99 Fla. 1, 126 Sou. Rep. 308. In that opinion the learned Justice discussed the powers of taxation which the Constitution provides may be exercised by State and County respectively, and held the second and third gas tax void. as contrary to the provisions of the Constitution limiting the levy of taxes by the State to the raising of a "revenue sufficient to defray the expenses of the State for each fiscal year, and also a sufficient sum to pay the principal and in-

terest of the existing indebtedness of the State." Art. IX, Sec. 2, Const.

The other Act was held to be valid. The indebtedness sought to be paid by the levy of a State tax was declared by the 1931 Act, in so far as it was incurred by counties, special road and bridge districts, or other special taxing districts, to be a "legitimate proper State expense incurred for a general and State purpose and should be wholly borne by the State of Florida." That declaration constituting the major premise of the argument and Article IX, Section 2, of the Constitution constituting the major premise the conclusion follows as the night the day that the State tax levied to retire county bonds and road and bridge district bonds or other special taxing district bonds and accruing interest thereon was a valid tax levy.

But if the major premise is true, then the bonds are illegal, as the State is inhibited from issuing State bonds except for the purpose of repelling invasion or suppressing insurrection or for the purpose of redeeming or refunding bonds already issued at a lower rate. (1885) Art. IX, Sec. VI, Constitution. And counties and incorporated cities and towns are inhibited from imposing taxes for State purposes. The Legislature is inhibited by the Constitution from authorizing the several counties and incorporated cities and towns imposing taxes except for "county and municipal purposes, and for no other purposes." Art. IX, Sec. V, Constitution.

It is therefore apparent that if the bonds issued by counties to defray obligations in road construction were issued to defray an expense which was a "legitimate proper State expense incurred for a general and State purpose," then the Act, requiring the County Commissioners to levy taxes sufficient to pay maturing bonds and the interest accruing

yearly on the entire issue, which bonds were issued for building roads, are void because the Constitution forbids the Legislature authorizing the Counties to levy taxes except for County purposes and forbids the levy of a tax for any "other purpose."

. If it is admitted that the Legislature, which is prohibited by the Constitution from issuing State bonds for any purpose except to repel invasion or suppress insurrection or for redeeming or refunding bonds already (in 1885) issued, may nevertheless by the simple expedient of creating a county or special road and bridge district or other special taxing districts, authorize such State agencies to incur *ad libitum* indebtedness for road building and issue bonds to defray it. And if it is further admitted that the authorization to levy any millage by way of taxation on property within the county to pay the maturing bonds every year and the accruing interest upon the entire issue is a valid exercise of legislative power, even though the imposition of the tax is for any reason beyond the revenue collecting capacity of the State agency or political subdivision and to enforce its collection will destroy the power to continue governmental functions and operate to exhaust the taxable value of the properties within the County, then it may be admitted that the bond holders have a valid contract with such State agencies which to the extent of the amount of money necessary to pay the maturing principal and accruing interest on their bonds each year amounts to a judgment for a liquidated sum the payment of which may be enforced by the public writ of mandamus to the extent of compelling the levy of a tax sufficient if collected to pay such sums of indebtedness, but even in such circumstances I doubt the propriety of saying that such contract is the equivalent of "a judgment and execution."

· None of the elements of an execution exist in the peremptory writ of mandamus to compel the levy of a tax. The tax being levied pursuant to the writ by no means insures its collection in dollars, and no process emanates from the judgment in mandamus under which property may be seized and sold to satisfy the judgment.

Under the provisions of Chapter 10409, Special Acts of 1925, Laws of Florida, Charlotte County, in September, 1925, issued two hundred thousand dollars in bonds for the purpose of erecting and furnishing a court house and in November of the same year issued one million six hundred and twenty-five thousand dollars in bonds for purposes of road construction. The court-house bonds were in denominations of one thousand dollars and the date of maturity was fixed at December, 1955. The road bonds were in denominations of one thousand dollars and maturing in series, the first maturing in December, 1928, and continuing to and including December, 1955. The rate of interest on all bonds was six per cent.

It does not appear from the pleadings what the total default in principal and interest of the above amounted to in October, 1932, when the writ in this case was issued. The writ shows only that the relators held some of each class of bonds and that the interest on court-house bonds held by them amounting to $5,400.00 was in default or would be up to September 1, 1933, and that the principal and interest on the road bonds to June 1, 1933, would amount to the sum of $78,160.00, making to that date a total default of $83,500.000 on bonds and interest of both classes.

It is alleged that an assessment of one mill only for interest and sinking fund requirements of the court-house bonds maturing up to September 1, 1933, was made for

the year 1932 which would produce on a basis of 100 per cent. collections only $1,416.00 for that purpose and there are "no funds in the hands" of the respondents "for the interest and sinking fund requirements of the issue of courthouse bonds;" that a like assessment of one mill has been made for interest and sinking fund requirements of the road bond issue; that the Board of Administration of the State, prior to the estimate of requirements for bond issue by the Board of County Commissioners, submitted its estimate that there would be available from the gas tax receipts for road bond issue requirements for the fiscal year the sum of $85,650.00, which on the basis of a full collection would make a total of $87,066.00 or $8,906.00 more than necessary to pay relators the full amount due to them for principal and interest on the road bonds held by them maturing up to June 1, 1933.

There is a paragraph at the close of the body of the writ which contains the allegation that "there has matured and will mature during the ensuing fiscal year (expiring September 10, 1933) a total of principal and interest on said bond issue in the amount of $388,850.00."

The substance of these allegations is that as to the court-house bonds held by the relators the county on the basis of a hundred per cent. collection of the one mill tax will lack the sum of $3,984.00 of an amount sufficient to pay the interest due to relators on the court-house bonds to September 1, 1933; that as to the road bonds held by relators matured and maturing up to June 1, 1933, there will be on hand from State gas taxes and the one mill ad valorem tax $8,906.00 more than enough to satisfy the relators' demands according to the allegations of the writ. The fiscal year as to the road-bond issue expires September 30, 1933.

. Now the writ requires the County Commissioners to convene instanter as a Board and "revise the budget and tax levy of Charlotte County for the year 1932 so as to include therein a sufficient amount to be raised by *taxation* against all of the taxable property, in Charlotte County for the year 1932 to pay the *bonds and interest* coupons of *relators* as described herein, and certify the same as required by law to the respondent" Tax Assessor, and that he "calculate and carry out said taxes and assess the same on the tax assessment roll" of the County for the year 1932, and that he certify the same to the Tax Collector and that the officer "proceed to collect the same in the manner prescribed by law."

No return has been made to the writ except a return of service. In December, 1932, there was a motion to quash the writ and relators replied by a motion for a peremptory writ.

. An alternative writ of mandamus must be enforced as a whole if at all. See State ex rel. Ellis v. Atlantic Coast Line R. Co., 51 Fla. 578, 40 Sou. Rep. 875; also 53 Fla. 650, 44 Sou. Rep. 213, 13 L. R. A. (N. S.) 320 n, 12 Ann. Cas. 359.

The petitioner must receive all or none of the relief that he demands. See Tampa Water Works Co. v. State, 77 Fla. 705, 82 Sou. Rep. 230.

When all that is required by the alternative writ cannot be compelled a peremptory writ will be refused. State ex rel. Moody v. Call, 39 Fla. 165, 22 Sou. Rep. 266.

When all the allegations of an alternative writ of mandamus taken together are not so definite and specific that performance can be readily enforced by the court a peremptory writ will not be issued. State ex rel. Ellis v. Atlantic Coast Line R. Co., *supra*.

Mandamus will not lie to compel official action until there has been an actual default. See McConhie v. State, 17 Fla. 238; State v. Jefferson County, 17 Fla. 707; Ex parte Ivey, 26 Fla. 537, 8 Sou. Rep. 427.

Where a respondent cannot be compelled to do what is required by the alternative writ the peremptory writ will be refused. Columbia Co. v. King, 13 Fla. 451.

· When a peremptory writ would be fruitless it will be refused. State ex rel. Vereen v. Commissioners of Marion County, 27 Fla. 438, 8 Sou. Rep. 749; State ex rel. Kehoe v. McRae, 49 Fla. 389, 38 Sou. Rep. 605, 6 Ann. Cas. 580; Howell v. State, 53 Fla. 199, 45 Sou. Rep. 453.

While the common law prerogative character of the writ in this County is not recognized yet its issuance is to a certain extent a matter of judicial discretion within well settled principles which have been established. See Myers v. State ex rel. Thompson, 81 Fla. 32, 87 Sou. Rep. 80.

Of the well settled principles which have been established there are the following: if the peremptory writ cannot be enforced, if it should be unavailing or fruitless if issued, if the respondent cannot be compelled to do what the alternative writ requires, if the officer cannot do what is required, that is if the act commanded is not within his power; if there has been no default in official action, where another adequate legal remedy is provided by law, where there is not a clear legal right in the relator to the performance of the particular duty, *where it compels performance of official duty some day in the future,* where substantial rights of parties not before the court are involved, where it seeks to control the exercise of official discretion, where the duty is not mandatory but a discretion exists as to when the act shall be performed or whether it shall be performed, where there has been an unreasonable

delay in applying for the writ, where it has become impossible to obtain the relief sought because time has elapsed (State ex rel. v. Baggett, 73 Fla. 36, 74 Sou. Rep. 16), a peremptory writ will not issue.

Chapter 10409, Special Laws, 1925, purported to authorize Charlotte County to issue bonds to an amount not exceeding two million dollars in addition to the bonds then outstanding. The proceeds of the sale of such bonds were required to be used as follows: $175,000 for a bridge, $200,000 for the erection and furnishing of a courthouse and $1,625,000 for roads. The Act provided that the "entire taxable property" of the County "shall be, and the same is, hereby pledged" for "security and payment" of the bonds. Section 3 required the County Commissioners to levy annually "all such special taxes on the taxable property within the limits" of the "County, as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof."

There is no mandatory requirement in that statute that a tax shall be levied annually to pay the principal of any bond which may mature before the expiration of thirty years (from the date of the bond issue, or which may mature at or during the years) named in the resolution to be adopted by the Board of County Commissioners.

The petitioners nevertheless ask for the levy of a tax to pay the principal of ten road bonds maturing so it is alleged in December of the years 1931 and 1932.

There is no provision in the Act requiring the levy of a special tax to create a special or separate fund for the especial benefit of relators or any other person holding any of the bonds. The petitioners however ask that the budget be revised so as to include therein a sufficient amount to be raised by taxation against all of the taxable property

in Charlotte County for the year 1932 to pay the *bonds* and interest coupons of *relators* as described *herein."*

If the peremptory writ is issued, and the tax levied sufficient to pay relators' bonds and interest should be collected, the proceeds of that tax levy, under the terms of the writ, will constitute a special fund for the relators. They would be entitled to it as fast as the payments come into the hands of the Tax Collector and the fund could not be legally utilized for any other purpose. No such duty is by law cast upon the County Commissioners.

. Under the provisions of the budget system existing in this State when Chapter 10409, *supra,* was enacted, the estimate of the County Commissioners of the necessary and ordinary expenses and all special and extraordinary expenses contemplated for the ensuing fiscal year and for which revenue will be available, was required to be so prepared that every item of expenditure or reasonably anticipated should be set forth with as much particularity as possible and should designate the particular fund from which each item of expenditure should be paid and that the estimates should be published within a week from the making of the estimates. At the next regular meeting of the County Commissioners or at a special meeting called not less than two weeks after the publication, the estimates should be considered and acted upon and copies of the estimates filed with the Comptroller. Such estimates were given by the statute the force and effect of fixed appropriations and the statute provides that the same shall not be altered or amended or exceeded. These provisions of the law became the terms and conditions of the bond contracts when issued by the County under Chapter 10409, *supra.* See State ex rel. Dos Amigos, Inc. v. Lehman, 100 Fla. (Part II) 1313, 131 Sou. Rep. 533.

The writ does not allege that the duty required by Section 2306 C. G. L., 1927, was not performed by the County Commissioners but merely alleged that the County Commissioners had fixed the millage "for interest and sinking fund requirements" at two mills and argumentatively asserted that levy to be insufficient. It is not alleged that the bond holders promptly acted upon the information contained in the published estimates, on the other hand it affirmatively appears that they allowed time to elapse, were guilty of unreasonable delay in applying for a writ to compel the levying of a tax which would be sufficient to meet the requirements. By the delay, of which the relators were guilty, the orderly processes of tax collections were seriously interrupted and the routine of the tax collecting officers obstructed.

There is no provision in the Act requiring the Tax Collector to collect the tax levied nor is there any allegation that he has failed in any manner to perform his duty, yet the writ commands him to collect the tax which the relators seek to have levied "in the manner prescribed by law."

The doctrine announced in the Dos Amigos case, *supra,* to the effect that where the State has authorized a city to contract and exercise the local power of taxation to the extent necessary to meet the engagements, the power thus given cannot be withdrawn until the contract is satisfied and the power given entered into and becomes a part of the obligation of the contract between the city and every bond holder, and if the city does not perform its duty it may be compelled to do so by mandamus, is generally accepted to be the law and is certainly supported by the authorities cited in the opinion. The doctrine as described in the words of the cases cited, however, appears to require not any modification but rather explanation.

Where the State has authorized contracts to be made by the public agency and the power given to such agency to levy local taxes to redeem the contracts or promise to pay, the assumption is that the State has such power. It has been said that the power to tax is the power to destroy, but obviously that trite and rather loosely expressed doctrine is not true, because the power to tax cannot be exercised to the point where the necessary governmental functions of the public agency are obstructed or caused to be suspended because it is politically impossible that the government should cease to function. A power of taxation authorized to be exercised to that extent is not legislation, it is tyranny.

The argument used in the Dos Amigos case, that because the city has incurred the obligation and enjoyed the fruits thereof it cannot be heard to plead poverty as a defense against the obligation of its contracts to pay its debts, is somewhat overstated because the word poverty as applied to the enforcement of a public obligation does not carry the same significance as when applied to the enforcement of a private obligation. The learned author of the opinion seems to recognize that distinction by stating: "It is not shown or alleged that the condition at Sanford was induced by any social or physical cataclysm devastating in its consequences" (text 536) and "the property in the municipality is not bound in like manner, as the property of an individual under a mortgage for their payment" (text 538), again "The record does not show that the payment of this accumulated tax in the first installment will make the burden confiscatory" (text 539).

Would any such defense be available in a proceeding to enforce a specific lien upon certain property created by a valid contract between individuals? In such case would it avail a debtor to plead that a storm or fire had destroyed

the building mortgaged, or that an earthquake had demolished it, or that to enforce the lien would wreck the debtor financially, so that he would be without resources to pursue his usual vocation? Certainly not.

The power of taxation referred to in the doctrine above quoted and expressed in the words following: "The power given enters into and becomes a part of the obligation of the contract between the city (in this case County) and every bond holder," is a power conferred by legislation, not necessarily by any particular statute but by all the statutes and the constitutional provisions bearing upon, relating to it or being in *pari materia*. A statute purporting to confer upon a county the power of taxation for any purpose, in such liberal terms as may be construed to vest a power of taxation by the county which as exercised would not carry into effect the constitutional requirement of uniformity and equalness of rate would not be upheld. Such construction would be disregarded and only that construction allowed as would square with constitutional requirements. So it appears to be clear that the obligation of the bond holders' contracts with the county, deemed to be so sacred and inviolate, is colored, influenced by, its extent and limitations determined by, not the language of the particular statute solely under which the bonds were issued but by the existent law in force at the time relating to and defining the power of taxation and its manner of exercise. The principle is recognized that the courts will compel and can compel the exercise of only the powers given by statute. See U. S. ex rel. Spitzer v. Town of Cicero, 41 Fed. Rep. 83.

The power given to the County of Charlotte to levy taxes for the purpose of paying the indebtedness authorized to be incurred was a limited power; limited by the provisions

of the Constitution to a uniform and equal rate of tax, by the general statutes, Sec. 2306 C. G. L, 1927, requiring the making of an estimate by the Commissioners of the county prior to the levying of a tax for the year, of the necessary, ordinary and extraordinary expenses contemplated and the publication of the same. The Annual Budget Act, Chapter 6814, Acts 1915, as amended by Chapter 7810, Laws 1919, constitutes part of the method or manner of exercising the taxing power by counties conferred upon them by any statute. It is a method of arriving at just taxation and a uniform and equal rate. The power is further limited by the terms of the Act itself to an annual tax levy such "as may be necessary to pay the interest on said bonds and provide a sinking fund for the payment thereof."

*No authority was given to lay a tax in any one year to pay the principal upon bonds which may accrue during such year.* To say that the power is implied is merely to read into the bond holders' contract a provision not existing in the law and to create in the interest of the bond holders a new and different contract from that provided for expressly by the Legislature and to lay upon the county an additional burden not contemplated by the statute. There is no hardship imposed upon the bond holder in such interpretation of the law. He has ample time to apply to the Commissioners for a tax levy to accomplish the purpose of the statute in the event the budget fails to make the proper estimate, or the Commissioners fail to levy a sufficient tax.

If the Commissioners refuse to comply with such demand the bond holder has ample time in which to seek his remedy by mandamus, but for him to acquiesce for years in an insufficient levy for a sinking fund to take care of bonds maturing in 1931 and 1932 and then ask for a tax levy in

one year sufficient to pay the principal of such matured bonds, or to await the passing of time for weeks until the budget is completed, the tax levied and the orderly processes of governmental functioning have begun and people are paying their taxes, and then ask the process of this or any court to compel a recall of the tax roll, revision of the budget, and levy of a greater tax is to demand what the law not only does not contemplate, which it made no provision for in the contract, but expressly and inferentially forbids. To yield to such a demand is to write a new contract for the bond holder, impose additional burdens on the people of the county and their property, suspend the functioning of government in the matter of collecting its revenue, create disorder and confusion, and encourage dilatoriness in the seeking of a remedy by one who believes himself aggrieved. 61 C. J. 891.

Every purchaser is charged with notice of the statute under which the bond was issued. If no power to tax is given expressly or by necessary implication to raise money to pay the bond the holder cannot require it. See United States v. County Court Macon Co., 9 Otto (U. S.) 582, 25 L. Ed. 331.

Whether the power exists by implication in the county to levy a tax to pay the bonds at maturity is not presented in this case because the statute under which the bonds were issued expressly limits the power to the imposition of a tax *annually* to that which "may be necessary to pay the interest on said bonds and *provide* a *sinking* fund for the payment thereof." (Italics mine.)

The doctrine is also recognized that the legislative purpose may be gathered from the statute authorizing the issuing of the bonds or some general law in force at the time.

See County Court of Ralls Co. v. United States, 15 Otto (U. S.) 733, 26 L. Ed. 1220.

, Upon the doctrine of spreading the tax over a period of years to meet the views expressed in the Dos Amigos case, *supra*, it is sufficient to say that the Act authorizing the bond issue allows no range of discretion in the exercise of the taxing power. To compel such a thing to be done and the levy of a tax sufficient to meet such requirements is not a matter of discretion by the court. That proposition involves the matter of the declaration of taxing power by the Legislature, a power which cannot be brought into existence by the court and delegated to the county. Nor do I think that the default by the county to provide in past years for the payment of its indebtedness as it arose brings into existence an equitable power in the court to compel the laying of a tax by the county during any one year in a greater amount than the Act permits.

I think the motion to quash the writ should be sustained and the motion for a peremptory writ denied.

BROWN and BUFORD, J. J., concur in the conclusion reached.